EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

BLUE AND WHITE SERVICE
CORPORATION, Defendant.

Civ. No. 4–86–345.

United States District Court,
D. Minnesota.

Nov. 19, 1987.

Lloyd Zimmerman, Rose Ann Wasser-
man, Minneapolis, Minn., for plaintiff.

David E. Orren, Milavetz and Associates,
P.A., Saint Paul, Minn., for defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge, Sitting by Designation.

The plaintiff in this action, Equal Employment Opportunity Commission ("EEOC") is a federal agency authorized to enforce Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e *et seq.* (1982). The defendant, Blue and White Service Corporation ("Blue and White") is a Minnesota corporation doing business in Minneapolis, Minnesota. Blue and White had and continues to have at least fifteen employees and is an employer engaged in a business affecting commerce within the meaning of section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h). The EEOC is authorized to bring this action under section 706(f)(1), 42 U.S.C. § 2000e–5(f)(1). This Court has jurisdiction to hear this case under 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

On April 24, 1986, the EEOC filed this action claiming unlawful retaliation against an applicant for employment in violation of section 704(a) of Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. § 2000e–3(a).[1] The employment discrimination charge claimed that Blue and White discriminated against Martin Butler, an applicant for employment, by refusing to hire Butler because he previously had filed a charge of employment discrimination against the defendant.[2] Blue and White stipulated an admission of liability and withdrew their defenses to the charge of employment discrimination on April 24, 1987. Partial summary judgment was ordered in favor of the EEOC on liability on May 14, 1987 by Judge MacLaughlin. Thus, the only matter for trial was the issue of damages. In particular, evidence at trial related to whether back pay should be awarded to Butler pursuant to 42 U.S.C. § 2000e–5(g).[3]

### I. FACTS

The factual basis for the recovery of back pay in this case involves four separate inquiries: What position did Butler apply for and was there an opening for this position, was Butler qualified for the position, what salary would he have received, and did he exercise reasonable diligence in finding other employment?

The parties do not dispute that on October 22, 1984 Butler filled out a job application with Blue and White and gave this application to the dispatch room supervisor, Fred Blankenberg. While Butler was in the office, Blankenberg had a discussion with Blue and White's general manager, Berry Mack, and Blankenberg told Butler after that discussion that he could not hire him because he had tried to sue the company. The parties disagree, however, on what position Butler applied for and what position was available on October 22, 1984.

In actions brought under Title VII, doubts about plaintiff's entitlement to back pay and its amount should be resolved against the employer. *See Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d

---

1. § 2000e–3(a) entitled, "Other unlawful employment practices," reads in relevant part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has made a charge ... under this title [42 U.S.C. §§ 2000e–2000e–17]."

    Civil Rights Act of 1964 § 704(a), 78 Stat. 257, (codified as amended at 42 U.S.C. § 2000e–3(a) (1982)).

2. Butler's original employment discrimination charge, filed on March 29, 1984, was dismissed by the EEOC and a notice of right to sue was issued to Butler. Butler charged that he was fired as an order taker when he refused a request from his supervisor to obtain women for sex. Butler did not file suit based on this charge.

3. Section 2000e–5(g) reads in relevant part:

    If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate.

    Civil Rights Act of 1964 § 706, 78 Stat. 259 (codified as amended at 42 U.S.C. § 2000e–5(g) (1982)).

614, 628 (6th Cir.1983); *Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364, 1380 (5th Cir.1974). Butler testified that he was told by Blankenberg that there was an opening at Blue and White for a full-time dispatcher and a part-time order taker. Butler states in his charge of discrimination that he applied for the position of order taker/dispatcher. (Plaintiff's Exhibit 1). The defendant argues that an "order taker/dispatcher" is merely a part-time order taker who fills in while the dispatcher is on break. This Court is not persuaded, however, by the import the defendant attributes to this designation. Butler testified that he believed he was applying for a full-time dispatcher position and the testimony of Blankenburg, the only other person in the dispatch room at the time, is not credible.

Blankenberg testified that Butler applied for a position as a part-time order taker. This testimony was impeached, however, by evidence that Blankenberg previously stated that Butler completed his application for a dispatcher position. Moreover, in that earlier statement, Blankenberg admitted that he could put Butler to work in a short period of time. Thus, the finding of this Court is that Butler applied for a position as a full-time dispatcher, and there was an opening for that position on October 22, 1986.

■ Even assuming that no position for a dispatcher had been available on October 22, 1984, back pay would be recoverable from the date the next dispatcher was hired. Courts have split on the issue of whether back pay is recoverable when the defendant can show that no opening existed for a position for which discrimination in hiring occured. The older view is that no back pay is recoverable. *See McCoy v. Safeway Stores, Inc.*, 5 E.P.D. 8405 (D.C. 1973) (refusal to let black women fill out applications); *Lea v. Cone Mills Corp.*, 301 F.Supp. 97, 102 (D.N.Car.1969), *aff'd in part*, 438 F.2d 86 (4th Cir.1971) (discriminatory application procedure). The better and more recent view is that back pay should be awarded from the date the first opening becomes available. *See Dillon v.*

*Coles*, 746 F.2d 998 (3rd Cir.1984) (discrimination against individual in hiring); *Mills v. International Brotherhood of Teamsters*, 634 F.2d 282 (5th Cir.1981) (refusal to refer individual for employment). This is consistent with the view that successful Title VII plaintiffs should ordinarily receive back pay in the absence of "special circumstances." *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed. 2d 1263 (1968).

The EEOC claims that Butler was qualified for the dispatcher position. This Court agrees. In the defendant's stipulation on liability, the defense that Butler was not competent to perform the work was expressly withdrawn. Thus, by implication, Blue and White admitted that Butler was qualified for the dispatcher position. In addition, the evidence shows that Butler had worked as a dispatcher while employed as an order taker with Blue and White, and he had worked as a dispatcher for his father's company. Butler's experience as a taxi driver included familiarity with the city of Minneapolis, and both Blankenburg and Mack, who were in charge of hiring at Blue and White, admitted that they had no knowledge that Butler had poor writing or interpersonal skills. *See* Memorandum and Order of May 14, 1987.

Based on the evidence relating to the salary of a full-time dispatcher from October 22, 1984 to April 17, 1987, when Butler received an offer for re-employed with Blue and White, the following figures are accepted for purposes of computing Butler's back pay:

October 22–November 22, 1984: 40 hours a week × 4.2 weeks × $6.70 = $1,125.60.

November 23–December 22, 1984: 40 hours a week × 4.2 weeks × $6.95 = $1,167.60.

December 23–December 31, 1984: 40 hours a week × 1 week × $7.20 = $288.00.

Total October 22–December 31, 1984: $2,581.20.

January 1–January 22, 1985: 40 hours a week × 3 weeks × $7.20 = $864.00.

January 22–April 22, 1984: 40 hours a week × 4.2 weeks × 3 months × $7.45 = $3,754.80.

April 22, 1985–December 31, 1985: 40 hours per week × 4.2 weeks × 8.1 months × $7.74 = $10,532.59.

January 1–December 31, 1986: 40 hours per week × 4.2 weeks × 12 months = $15,603.84.

January 1–April 30, 1987: 40 hours per week × 4.2 weeks × 4 months × $7.74 = $5,201.28—$619.20 = $4,582.81 (period adjusted to end April 17, 1987).

Total October 22, 1984–April 17, 1987 = $37,918.51.

■ Blue and White argues that Butler did not exercise reasonable diligence to earn money after October 22, 1984 to mitigate damages for back pay.[4] The employee must use reasonable effort to find other employment after being discriminated against to mitigate damages for back pay. *See Edwards v. School Bd.,* 658 F.2d 951, 956 (4th Cir.1981). The burden of proving that the employee did not show reasonable effort is on the defendant. *See Di Salvo v. Chamber of Commerce,* 568 F.2d 593, 598 (8th Cir.1978). Blue and White has not met this burden.

■ After Butler was unlawfully denied employment with Blue and White, he obtained work driving a taxi cab for Aly Abu-ria, the owner of a taxi operating for Blue and White Taxi Co. While the record of Butler's earnings from October 25, 1984 to April 28, 1985 is sketchy due in part to the nature of Butler's employment, the evidence does not show that his earnings during this period were unreasonably low. In May of 1985, Butler began work for a Minneapolis construction company, during which time he suffered a back injury. The evidence indicates that this injury limited the types of employment that Butler could pursue. Butler, however, did start his own carpet cleaning business following the accident, he obtained part-time employment as a leasing agent in an apartment building, and he was employed as a pizza delivery driver. Based on this record of post-discrimination employment, this Court finds that Butler did exercise reasonable diligence in finding work.

## II. OFFSET OF WORKER'S COMPENSATION PAYMENTS

■ Pursuant to 42 U.S.C. § 2000e–5(g), interim earnings must be offset from back pay accruing from the date of unlawful discrimination in computing an award of back pay. 42 U.S.C. § 2000e–5(g) (1982). Blue and White argues that worker's compensation benefits for lost wages are interim earnings within the meaning of this provision and accordingly should be offset against any award of back pay. This Court agrees.

It is well established that the purpose of awarding plaintiff's back pay in Title VII actions is to make persons whole who suffer from unlawful employment discrimination. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 419, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). Back pay is a form of relief in Title VII actions modeled after the National Labor Relations Act. *Id.* As such, opinions of the National Labor Relations Board ("NLRB") provide guidance to district courts on the computation of back pay.

As early as 1967, the NLRB changed its previous position on the deductibility of the component of worker's compensation payments representing lost wages. *See American Mfg. Co.,* 167 NLRB 520 (1967). The NLRB states in *American Mfg. Co.:*

[A]wards of workmen's compensation consist of two components, one being a payment for lost wages and the other being reparation for physical damage suffered. The entire payment, including the wage component, has been regarded as a collateral benefit where backpay was tolled. But where backpay is awarded for the same period for which wages have already been replaced in part, to continue to hold the wage portion of the award to be nondeductible would result

---

**4.** Section 2000e–5(g) of Title 42 states in relevant part: [A]mounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e–5(g) (1982).

in double payment to the employee for that period, and hence this part is more accurately regarded as deductible interim earnings. However, the portion of the award which is reparation for physical damage suffered is unrelated to wages earned, does not result in double wage payment to the discriminatee, and continues to be excludable from interim earnings.

The holding of *American Mfg. Co.* on the deductibility of workers compensation payments for lost wages remains the rule in NLRB actions. *See Canova v. NLRB*, 708 F.2d 1498, 1504 (9th Cir.1983); *Graves Trucking, Inc. v. NLRB*, 692 F.2d 470, 475 n. 4 (7th Cir.1982).

No federal district court has addressed the issue of whether the portion of worker's compensation benefits attributable to lost wages should offset a Title VII award of back pay. The United States Court of Appeals for the Tenth Circuit has decided that temporary total disability and partial disability payments are not required to be offset from back pay. *See Whatley v. Skaggs Co., Inc.*, 707 F.2d 1129, 1138 (10th Cir.1983). That court, however, did not consider whether these amounts were compensation for lost earnings or whether the relevant state law on disability benefits recognized lost income as a component in computation of disability benefits. Moreover, the opinion in *Whatley v. Skaggs Co., Inc.* merely leaves the matter of whether to offset disability benefits to the discretion of the district court. *Id.*

The EEOC argues that worker's compensation payments for lost wages should not be offset from any back pay award relying primarily on authority disallowing the offset of unemployment compensation payments. *See, e.g., NLRB v. Gullet Gin*, 340 U.S. 361, 363, 71 S.Ct. 337, 95 L.Ed. 337 (1951) (unemployment compensation as collateral benefit). However, a key distinction between worker's compensation benefits and unemployment compensation is that worker's compensation benefits are com-

puted in some states based on a percentage of the injured employee's wage rate. Under Minnesota law, Butler's worker's compensation benefits may be broken down into two components: a sum of money for lost wages due to the injury and a sum of money for physical impairment. The latter sum should not be offset from a back pay award, while the sum representing lost wages should be offset to avoid double recovery for lost earnings. This result is necessary to make the victim of discrimination whole, and not more than whole, and will not lessen the impact of Title VII on the eradication of employment discrimination. *See Albemarle Paper Co.*, 422 U.S. at 421, 95 S.Ct. at 7373.

The parties stipulated to the fact that Butler received $9,544.09 for temporary total and partial disability computed as 66⅔ percent of his weekly wage rate pursuant to statute. *See* Minn.Stat.Ann. § 176.101(1–2) (Supp.1987). Butler received $8,766.64 for impairment compensation based on loss of body function. *See* Minn.Stat.Ann. § 176.101(3b) (Supp.1987). The Court finds that the sum representing lost wages of $9,544.09 should be added to Butler's interim earnings from October 22, 1984 through April 17, 1987 in computing back pay.[5]

## III. COMPUTATION OF BACK PAY

■ The period of back pay in this case begins on October 22, 1984, the date of Blue and White's unlawful retaliation against Butler. On April 17, 1987, Blue and White offered Butler a job at the pay rate of a dispatcher. (Plaintiff's exhibit # 17). This unconditional offer of employment cut off the back pay period. *See Ford Motor Co. v. EEOC*, 458 U.S. 219, 228–30, 102 S.Ct. 3057, 3063–65, 73 L.Ed.2d 721 (1982).

This Court orders that Blue and White is liable for back pay in the amount of $17,424.36, excluding interest, based on the following computation:

---

**5.** Butler also received $3,106.64 on March 4, 1987 for future lost wages. Because the portion of this sum which might be allocated to the period from March 4, 1987 to April 17, 1987 is negligible, no finding is made on this amount.

Back pay from October 22, 1984–April 17, 1987 = $37,918.51

Interim Earnings:

Blue and White Service Corporation: October 22, 1984–April, 1985—$1,572.00

Sire Sing Khalsa Chimney Co.: May–August 30, 1985—$4,080.50

Rixman Management Co.: June–August, 1986—$596.00

Domino's Pizza: November, 1986–March, 1987—$1,018.88

New Again: May 28, 1986–April 30, 1987—$3,837.68 − $155.00 = $3,682.68 (adjusted to end period on April 17, 1987).

Worker's Compensation (for lost wages) = $9,544.09

Total interim earnings = $20,494.15

Back pay from October 22, 1984–April 17, 1987 minus interim earnings = $37,918.51 − $20,494.15 = $17,424.36

Interest is allowable on back pay awards in Title VII cases. *See Whatley,* 707 F.2d at 1140. Interest on the amount of $17,424.36 is adjudged against the defendant to be computed by the Court upon stipulation of the parties by request of this Court.

This memorandum constitutes the findings of fact and conclusions of law of the Court.