[No. 59591-7.   En Banc.   September 15, 1994.]

CATHERINA WHEELER, *Petitioner*, v. CATHOLIC
ARCHDIOCESE OF SEATTLE, *Respondent.*

*Judith A. Lonnquist* and *Law Offices of Judith A. Lonnquist, P.S.*, for petitioner.

*Patrick W. Crowley* (of *Crowley & Mackin*), for respondent.

MADSEN, J. — At issue in this case is whether workers' compensation benefits representing replacement for lost wages should be deducted from a jury award of damages arising out of claims based on handicap discrimination, retaliation, and negligent supervision.

## FACTS

Catherina Wheeler, hereafter referred to as the Plaintiff, was hired in 1979 as head housekeeper of St. Thomas Center, a conference facility owned by the Catholic Archdiocese of Seattle (Archdiocese). In 1981, Plaintiff was promoted to executive housekeeper. In April 1984, the Archdiocese hired Norbert Patton as director of maintenance at the center. Patton combined the housekeeping and maintenance departments under his supervision. As a result, Plaintiff's salaried position became an hourly position and she reported to Patton instead of the center's administrator, Donald Leak. When Plaintiff complained to Leak about problems she was experiencing with Patton, Leak told her to communicate directly with Patton.

In May 1984, Plaintiff injured her hand while working at the center, and took a 3-month medical leave to recuperate. Before she went on leave, Patton made some sexually explicit comments to her.

During her leave, Plaintiff received a memorandum from Leak stating that if she and Patton did not make progress in their communication problems within the month, her work performance would be considered unsatisfactory. Plaintiff's office was closed during her leave and she was assigned a corner of Patton's office as her work station. Patton also informed Plaintiff that she could not return to work without a full work release from her doctor.

Plaintiff became despondent because of her health and events at work and attempted suicide. She spent 3 weeks of her 3-month leave of absence in an inpatient treatment facility. She continued in therapy for several years, and her treating psychologist testified that she suffers from posttraumatic stress disorder.

Plaintiff returned to work after the 3-month leave before her hand was completely healed. In April 1985, Plaintiff again took a leave of absence to undergo the first of three surgeries to repair her injured hand. During this and subsequent periods of leave, Plaintiff received workers' compensation benefits, and for a few months she received voluntary payments from the Archdiocese compensating for the difference between the workers' compensation time-loss benefits and Plaintiff's normal salary.

Plaintiff encountered serious conflict and harassment from Patton from April 1984 until September 1985, when she left the center for her second surgery. She left with the understanding that the center would have a job for her when she returned, but when her doctor released her 8 months later, she was told that her previous position had been filled. She was not offered any other jobs with the Archdiocese.

On May 19, 1987, Plaintiff filed suit against the Archdiocese for handicap, age, and sex discrimination; retaliation for opposing discrimination; intentional infliction of emotional distress; negligent supervision/negligent infliction of emotional distress; invasion of privacy; outrage; and failure to provide a safe workplace.

The case was tried before a jury in September 1990. At the close of the evidence, the trial court granted Plaintiff's motion for a directed verdict on her handicap discrimination claim and denied the Archdiocese's motion to dismiss the negligent supervision claim. The court did dismiss Plaintiff's claim of failure to provide a safe workplace. The court reasserted its pretrial ruling that the Archdiocese would not be entitled to an offset of Plaintiff's workers' compensation benefits if she were awarded damages.

The jury returned a general verdict of $150,000 in favor of Plaintiff on the claims of handicap discrimination, retaliation, and negligent supervision/negligent infliction of emotional distress. The trial court denied the Archdiocese's motion for a new trial and Plaintiff's motion for reinstatement. The court then entered judgment on the verdict and awarded Plaintiff approximately $47,000 in attorney's fees and expenses, well below her request of approximately $140,000.

The parties cross-appealed. The Court of Appeals upheld the directed verdict and the trial court's refusal to dismiss the negligent supervision claim and to order reinstatement. *Wheeler v. Catholic Archdiocese*, 65 Wn. App. 552, 829 P.2d 196 (1992). These issues are not before us.

The Court of Appeals also held that the trial court erred in refusing to offset Plaintiff's damages award by the amount of her workers' compensation benefits representing replacement for lost wages. *Wheeler*, at 572. The Court of Appeals remanded so that the trial court could determine the amount of the offset and adjust the damages award accordingly. *Wheeler*, at 572. The Court of Appeals also held that the trial court erred in reducing Plaintiff's attorney's fees and expenses and remanded for redetermination. *Wheeler*, at 575-76. The court denied Plaintiff's request for attorney's fees on appeal.

Both parties petitioned for review of the Court of Appeals' decision. We denied the Archdiocese's petition for review of the directed verdict and negligent supervision issues. We accepted Plaintiff's petition requesting review of the offset issue as well as the issue of whether the Court of Appeals erred in denying her attorney's fees and expenses on appeal.

I

We turn first to Plaintiff's contention that the Court of Appeals erred in failing to apply the collateral source rule to prevent an offset of workers' compensation in this case. We have not yet decided whether workers' compensation benefits, paid for an injury occurring while plaintiff was in

the employ of the defendant, may be offset against a back pay award covering the same employment period. The federal courts, however, have confronted this precise issue. In this circumstance, federal courts have resolved the question of offset of workers' compensation benefits under the discriminatee's duty to mitigate, not under the collateral source rule as urged by the parties in this case. *See Wheeler*, at 570 (citing *Canova v. NLRB*, 708 F.2d 1498, 1504 (9th Cir. 1983); *American Mfg. Co.*, 167 N.L.R.B. 520, 522-23 (1967); *Aguinaga v. United Food & Comm'l Workers Int'l Union*, 720 F. Supp. 862, 876 (D. Kan. 1989); *EEOC v. Blue & White Serv. Corp.*, 674 F. Supp. 1579, 1582-83 (D. Minn. 1987)). These cases concluded that an offset of workers' compensation against an award of back pay is warranted because these benefits represent, in part, payment for lost wages. *See American Mfg. Co.*, at 523; *EEOC*, at 1583.

In employment discrimination cases, the doctrine of mitigation underlies the offset of a payment of lost wages against an award of back pay. For example, under Title VII a discriminatee has a duty to mitigate damages when he or she has suffered economic loss as a result of unlawful employment discrimination. Robert Belton, *Remedies in Employment Discrimination Law* 374 (1992). Section 706(g) of Title VII specifically provides that " '[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.' " Belton, at 374 (quoting 42 U.S.C. § 2000e-5(g) (1988)). Viewing workers' compensation benefits as wages, courts offset them under this rubric as deductible interim earnings. Given the duty to mitigate, the logic behind such an offset is clear:

[W]here backpay is awarded for the same period for which wages have already been replaced in part, to continue to hold the wage portion of the award to be nondeductible would result in double payment to the employee for that period, and hence this part is more accurately regarded as deductible interim earnings. However, the portion of the award which is reparation for physical damage suffered is unrelated to wages earned, does not result in double wage payment to the dis-

criminatee, and continues to be excludable from interim earnings.

*American Mfg. Co.*, at 523. This view is consistent with state and federal case law on the duty to mitigate in employment termination cases. *See Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 859 P.2d 26 (1993); *Ford Motor Co. v. EEOC*, 458 U.S. 219, 73 L. Ed. 2d 721, 102 S. Ct. 3057 (1982) (damages reduced if suitable employment is refused); *see also Hunter v. Allis-Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1427 (7th Cir. 1986) (duty to mitigate in employment discrimination law is the same as the doctrine of avoidable consequences in tort).

■  The collateral source rule is a corollary to the mitigation doctrine which operates to deny an offset where a person, injured by the tortfeasor, receives compensation for the same injury from a source independent of the tortfeasor. *Ciminski v. SCI Corp.*, 90 Wn.2d 802, 804, 585 P.2d 1182 (1978); *Stone v. Seattle*, 64 Wn.2d 166, 172, 391 P.2d 179 (1964). The defendant is prevented from deducting the independent compensation from the damages that the plaintiff would otherwise collect from that defendant, despite the fact that the plaintiff may receive a double recovery. *Xieng v. Peoples Nat'l Bank*, 120 Wn.2d 512, 523, 844 P.2d 389 (1993); *Ciminski*, at 804. For example, the collateral source rule would prevent the defendant from reducing his or her damages because the plaintiff/employee received insurance benefits from the employee's own independent insurance policy. *Phillips v. Western Co. of North Am.*, 953 F.2d 923, 930 (5th Cir. 1992); *Smith v. United States*, 587 F.2d 1013, 1015 (3d Cir. 1978).

■  Plaintiff cites *Hayes v. Trulock*, 51 Wn. App. 795, 755 P.2d 830, *review denied*, 111 Wn.2d 1015 (1988) as support for her argument that the collateral source rule applies in this case to prevent an offset. *Trulock* involved an unlawful termination based on discrimination. Following termination the plaintiff applied for and received unemployment benefits. Plaintiff sued the employer for damages related to the discriminatory discharge and received an award of back

pay. The employer sought an offset of plaintiffs unemployment benefits against this award. The trial court, following federal decisions, denied the offset, reasoning that the benefits were a collateral payment. *Trulock*, at 804. We find *Trulock* inapposite. The plaintiff in that case received unemployment benefits as a result of her termination. In contrast, the workers' compensation benefits at issue here were not related to plaintiff's discriminatory termination, but were paid in connection with a job-related physical injury. Since compensation was made for two different injuries, the collateral source rule has no application under the facts of this case. Thus, the trial court erred in applying the collateral source rule to deny an offset here.

Moreover, an offset may have been appropriate in this case under the deductible interim earnings rule. We agree with the Court of Appeals that the federal view of workers' compensation as deductible interim wages makes sense. However, we have several concerns with its application in this case. First, the defendant has cited no statutory authority for dividing workers' compensation awards into payments for lost wages and physical injury. Second, no evidence was offered in this case as to what part of the workers' compensation payment was attributable to wages. Third, Washington's Law Against Discrimination does not have a provision which parallels section 706(g) mandating an interim earning deduction against a back pay award.[1] Because neither party presented argument regarding the application of the deductible interim earnings rule, none of these issues was adequately addressed for resolution in this court.

■ Furthermore, even if we wanted to follow the federal approach outlined above and order an offset of damages, we could not do so because of the general nature of the jury's award. As stated earlier, the jury awarded Plaintiff $150,000 in general damages. Nowhere did the jury specify the

---

[1] It is interesting to note, however, that the Washington State Legislature recently concluded that unemployment compensation benefits must be offset against a back pay award against an employer. RCW 50.20.190(5)(a), (b).

amount of damages allocable to back wages, future wages, and pain and suffering, or to the claims of discrimination, retaliation, and negligent supervision. Where there is no request by either party during the course of the trial to segregate items in a verdict, the court is without a basis to thereafter dissect the general verdict to determine what part represented what items. *Foster v. Giroux*, 8 Wn. App. 398, 399, 506 P.2d 897 (1973); *see also Lange v. Raef*, 34 Wn. App. 701, 705-06, 664 P.2d 1274 (1983); *Bliss v. Newport*, 58 Wn. App. 238, 241, 792 P.2d 184 (1990). Thus, there is no way for any court to now determine whether the jury in fact awarded Plaintiff back pay damages subject to an offset.

Anticipating this result, the Archdiocese maintains that a special verdict form was not necessary. The Court of Appeals in *Bliss* identified three separate ways to handle offset issues in the trial court: the parties may introduce evidence of the amount of damages and use a special verdict form to identify each amount, or they may exclude any evidence of particular amounts of damages, or they may stipulate that the matter be determined by the trial court. *Bliss*, at 241 (citing *Lange*, at 706). The Archdiocese maintains that the third option applied here as the trial court reserved the issue of offset for its own determination. This assertion ignores the fact that the trial judge announced that he would not allow an offset. On this record it cannot be said that the parties entered a stipulation as contemplated by *Bliss*.

The Archdiocese failed to properly preserve the offset issue with a request for segregated damages. This effectively deprived the court of a means by which to calculate a proper offset, so the jury's award of general damages must stand. Accordingly, we must reverse the holding of the Court of Appeals and deny an offset in this case.

## II

The second issue presented is whether the Court of Appeals erred in denying Plaintiff attorney's fees and expenses on appeal. Former RCW 49.60.030(2) provides for the recovery by a plaintiff in a discrimination action of "the

cost of suit including a reasonable attorney's fees or any other remedy authorized by this chapter or the United States Civil Rights Act of 1964 . . .". This court has held that the statute limits an award of fees and costs to the prevailing party in a discrimination action. *Blair v. WSU*, 108 Wn.2d 558, 572, 740 P.2d 1379 (1987).

■ In *Blair*, this court cited the United States Supreme Court in stating that the extent of the plaintiff's success is a crucial factor in determining the proper amount of attorney's fees under a civil rights action. *Blair*, at 572 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983)). A party prevails when it succeeds on any significant issue which achieves some benefit the party sought in bringing suit. *Blair*, at 572; *Hensley*, at 433.

■ On appeal, Plaintiff succeeded in keeping her claims in court, but the Court of Appeals ordered a significant reduction of her damages award. Given the circumstances of this record, we have found that this reduction was made in error. We conclude, therefore, that Plaintiff did achieve the benefit she sought in bringing suit and that she was the prevailing party on appeal. *See Stout v. State*, 60 Wn. App. 527, 528, 803 P.2d 1352, *review denied*, 116 Wn.2d 1029 (1991); *Moritzky v. Heberlein*, 40 Wn. App. 181, 183, 697 P.2d 1023 (1985) (determination of prevailing party made on basis of which party has affirmative judgment rendered in her favor at conclusion of entire case). In other words, this court's resolution of the substantive issues in a case may alter previous decisions regarding attorney's fees in the same case. Our identification of the prevailing party determines who shall receive fees at the trial court and Court of Appeals levels. We reverse the Court of Appeals' denial of attorney's fees. Since this case will be remanded to the Superior Court for a redetermination of attorney's fees awarded at trial, we also remand to the Superior Court for a proper determination of fees on appeal pursuant to RAP 18.1(i).

BRACHTENBACH, DURHAM, SMITH, and GUY, JJ., concur.

JOHNSON, J. (concurring in part, dissenting in part) — I agree with the majority's holding that the undifferentiated damage award made offset impossible, and with the resolution of the attorney fees issue. However, I do not concur in the discussion of the interim earnings rule, which was not raised nor briefed by the parties. Nor do I agree with the majority's discussion of the collateral source rule, which relies upon the unsupported statement the rule is not applicable because the case involves two "injuries". The relevant event for purposes of the collateral source rule is the single period of lost wages. Regardless of the number of injuries, the collateral source rule would apply to prevent the intentionally tortious employer from escaping responsibility for its employee's lost earnings. Instead, under the majority's proposed application of offset, the unlawful employer receives a windfall; a windfall that comes at the expense of the public fund because the Department of Labor and Industries will not be able to recoup the wage loss paid under workers' compensation. This is contrary to all our recent cases dealing with the collateral source rule. *Xieng v. Peoples Nat'l Bank*, 120 Wn.2d 512, 844 P.2d 389 (1993); *Ciminski v. SCI Corp.*, 90 Wn.2d 802, 585 P.2d 1182 (1978); *Hayes v. Trulock*, 51 Wn. App. 795, 755 P.2d 830, *review denied*, 111 Wn.2d 1015 (1988).

UTTER, J, concurs with JOHNSON, J.