Stephen Gerald STAUB, Plaintiff,

v.

The BOEING COMPANY, Defendant.

No. C94–332C.

United States District Court, W.D. Washington.

Feb. 26, 1996.

G. Val Tollefson, Danielson Harrigan & Tollefson, Seattle, WA, John Thomas Costo, Bellevue, WA, for plaintiff.

Kevin J. Hamilton, Thomas More Kellenberg, Perkins Coie, Seattle, WA, for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COUGHENOUR, District Judge.

This matter comes before the Court on defendant's motion for summary judgment. Neither party requests oral argument. Having reviewed the pleadings, memoranda, exhibits, and other documents on file, the Court now finds and concludes as follows:

### I. BACKGROUND

Stephen Staub is suing Boeing for violating the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and Washington's Law Against Discrimination, Wash.Rev.Code § 49.60.

The parties agree on much of the factual history, and it will not be entirely recounted here. Staub worked at Boeing from 1985 until May of 1994, in a number of jobs in the Fabrication Division. He suffered a series of workplace injuries that culminated in an extended medical leave in September, 1992. Staub's physician, Dr. Lee Norman, extended the medical leave through 1993. Boeing also conducted an independent medical exam of Staub, and concluded that he could not return to work in the Woodshop Toolmaker position he had held in 1992. Staub's medical leave was further extended when he had shoulder surgery in July, 1993.

In December, 1993, Staub's doctor concluded that Staub's condition had stabilized and released Staub to work. Among the medical restrictions imposed on Staub's return to work by Dr. Norman were the following: (1) No use of vibratory tools; (2) No prolonged or continuous overhead work; (3) No climbing or ladder work; (4) No crawling; (5) No repetitive lift/grip/grasp/torque tasks; (6) No lift over 25 lbs; (7) No carry over 50 lbs. for 3 mos.; (8) No unprotected heights.

Boeing's doctor issued the same restrictions. The parties appear to agree that Staub's limitations are quite severe.

Boeing states that by the time he was released to work, it had laid off thousands of workers due to retrenchment in the airline industry, lack of new orders, delays in deliveries, and canceled orders. Boeing notes, for example, that its total orders fell from 887 in 1989 to 243 in 1992. Since January, 1991, Boeing has laid off 18,848 employees in its Commercial Airplane Group. The overall contraction was felt similarly in the Fabrication Division. Layoffs beginning in January 1991 total 3,735, representing over a third of the 8,500 employees in the division now.

Boeing states that it made enormous efforts to accommodate Staub's new medical restrictions and find him an open position. All of the positions Staub had previously held, "Toolmaker Plaster Plastic B," "Woodshop Toolmaker B," and "Template Man B," were no longer suitable for Staub, due to his medical restrictions. Boeing states that it also examined other positions within the tooling division that Staub had occupied previously, but found none open.

Boeing then attempted to find a position that would fit with Staub's medical restrictions and capabilities elsewhere within the company. Staub does not dispute the existence of Boeing's internal review process and that his case was individually reviewed. Boeing's Medical Placement Review Board, which examines the medical restrictions placed on an employee and attempts to match the restrictions to an open position within the company, considered Staub's case on January 12, 1994. The Board found no open positions for which Staub was qualified, considering his seniority and his medical restrictions. The Board concluded that it could accommodate Staub's disabilities only by displacing someone from a position or by violating preferential rights under the collective bargaining agreement. Staub was laid off in May of 1994.

Staub states that during the time between his release to work and his layoff, he attempted to get information but was "rebuffed" by Marjorie Wooten, his case coordinator and by Janice Donley, the rehabilitation counselor hired by Boeing to assist him with finding employment outside the company. Further, Staub states that Boeing refused to reassign him to the Modified Workshop, a unit designed for medically restricted employees. Finally, Staub states that he was not contacted during the review process, was not invited to attend the Board meeting with his attorney.

## II. ANALYSIS

■ Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Under the Rule, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### A. ADA Claim

■ The ADA prohibits discrimination in the terms and conditions of employment based on a person's disability. To establish a claim, the plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is qualified to perform the essential functions of the job, with or without reasonable accommodation, and (3) that he has suffered adverse employment action because of his disability. 42 U.S.C. § 12112; *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir.1995). The plaintiff bears the burden, at all times, of persuading the trier of fact that he has been the victim of illegal discrimination due to his disability. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–13, 113 S.Ct. 2742, 2747–50, 125 L.Ed.2d 407 (1993); *White v. York Int'l Corp.*, 45 F.3d 357, 361 (10th Cir.1995). Once the plaintiff

makes a facial showing that reasonable accommodation is possible, however, the burden of production shifts to the employer to show that it is unable to accommodate the employee. *Mason v. Frank*, 32 F.3d 315, 318–19 (8th Cir.1994). If the employer shows that the plaintiff cannot perform the essential functions of the job even with reasonable accommodation, the plaintiff must rebut that showing with evidence of his individual capabilities. *Benson*, 62 F.3d at 1112.

■ The parties do not dispute that Staub is disabled within the meaning of the ADA. The dispute here concerns whether there were job openings and whether Boeing reasonably accommodated Staub's disability. Staub argues, first, that Boeing has failed to meet its burden of production on the issue of inability to accommodate Staub. This argument is soundly refuted by the record. Virginia Rush, Supervisor–Workforce Administration for the Fabrication Division, testified that she conducted a search for hourly positions that Staub could perform throughout the Puget Sound Region after he was released to work by his physician. To conduct this search, she compared Staub's seniority, work history, training, and medical restrictions with a listing of job codes in the division. Between January and April, 1994, when Staub was laid off, Rush found no open hourly positions for which Staub was qualified. Rush testified that the only way Staub could have been placed was by displacing an employee already in a position for which Staub was qualified. Rush testified no one at the MPRB meeting was able to identify positions that were open for Staub. Rush also testified that after the Fabrications Division was unavailable for Staub, the Hourly Workforce Administrations for other divisions were asked to search, but also found nothing. Similarly, Marjorie Wooten testified that the Board considered Staub for several different types of positions, but found no openings for positions for which he might be qualified. Wooten also noted that two factors impeded Boeing's ability to accommodate Staub: first, the widespread workforce reductions severely limited placement options; and second, Staub's medical restrictions "were among the most severe that I

have ever encountered in my efforts to place medically restricted employees at Boeing." Wooten Decl. at 5.

■ Second, Staub argues that, even if Boeing has met its burden of production, he has sufficiently rebutted the evidence. Staub argues that Boeing failed to conduct an "informal, interactive process" with him to identify potential reasonable accommodations. The regulations Staub cites for this proposition, 29 C.F.R. § 1630.2(o )(3), is inapposite on these facts. Section 1630.2(o )(3) provides:

> To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with a qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodation that could overcome those limitations.

First, § 1630.2 does not require an informal process; it merely suggests it in certain circumstances. *Accord White,* 45 F.3d at 363. More important, the purpose of the informal process, if there is one, is to identify the limitations of the employee. But Staub and Boeing agree on all of his limitations. Here, the only issue was whether there were job openings that fit his limitations. Further, Boeing had already conducted an elaborate informal process with Staub, which included hiring an outside vocational counselor, conducting independent medical exams, and obtaining information concerning Staub's precise limitations from his own physician.

■ Third, Staub states that Boeing should have reassigned him to the Modified Workshop, a place where he worked at one point earlier in his career when he was recovering from an injury. However, it is undisputed that the Modified Workshop is a temporary light duty position, designed to facilitate reentry into the workforce of individuals with temporary disabilities. Assignment to the shop is generally limited to 90 days. The ADA does not impose a duty upon Boeing to create a new, permanent position for Staub in this otherwise temporary-placement position. *See Calhoun v.*

*Liberty Northwest Ins. Corp.,* 789 F.Supp. 1540, 1547 (W.D.Wash.1992).

■ Finally, Staub argues that he was entitled to be present, with his attorney, at the Board meeting when Staub's case was considered. This is frivolous. Nothing in the ADA suggests that an employee has a right to be present with counsel at an internal meeting, even when the employee's future is considered. Staub cites absolutely no authority for this proposition, and the Court rejects it.

### B. Washington Law Against Discrimination Claim

■ Staub's claims under the Washington Law Against Discrimination fail for the same reasons as the ADA claims fail. Under Washington law, the plaintiff must show (1) that he is handicapped, (2) that he was qualified to fill a vacant position, and (3) that the employer failed to take affirmative measures to make known suitable job opportunities to the plaintiff and to determine whether he was qualified for those positions. *Wheeler v. Catholic Archdiocese,* 65 Wash.App. 552, 560–61, 829 P.2d 196 (1992), *rev'd on other grounds,* 124 Wash.2d 634, 880 P.2d 29 (1994); *Curtis v. Security Bank,* 69 Wash. App. 12, 17, 847 P.2d 507 (1993).

■ Staub argues that Boeing failed to take affirmative steps to make openings known to him. This argument fails for two reasons. First, Staub has not met his burden of demonstrating that he was qualified for any *vacant* positions. As is clear from the record, Boeing suffered from a lack of job openings at the time Staub was released to work, and had a surplus of laid-off employees with more seniority than Staub. Second, the record amply demonstrates that, regardless of whether Boeing announced a particular job opening or not, it took many affirmative steps to accommodate Staub's disability and accommodate him. Boeing conducted an organized internal search for job openings for Staub, as it does for others, and appointed a vocational counselor to assist him. The Washington cases make it clear that the law is satisfied when the employer takes positive steps to accommodate the physical limitations of employees, as opposed to treating a

disabled employee like "any other job applicant." *See Curtis,* 69 Wash.App. at 18–19, 847 P.2d 507 (citing *Holland v. Boeing Co.,* 90 Wash.2d 384, 390, 583 P.2d 621 (1978); *Dean v. Municipality of Metropolitan Seattle–Metro,* 104 Wash.2d 627, 708 P.2d 393 (1985)). There is simply no evidence here that Boeing did not take affirmative steps to locate open positions for which Staub might be qualified.

### III. CONCLUSION

■ The Court concludes that there are no genuine issues of material fact. Plaintiff cannot demonstrate that there were any openings at Boeing for which he might be qualified, either with or without accommodation of his medical restrictions. The ADA and the Washington Law Against Discrimination do not place a burden on employers to fire other employees, to promote the disabled to positions for which they are not qualified, or to create new jobs. The record demonstrates that, due to the tremendous downsizing and layoffs at Boeing at the time Staub was released to work, there were simply no positions that Boeing could offer him. Accordingly, Boeing's motion for summary judgment must be GRANTED and this case dismissed. The Clerk is directed to enter judgment of dismissal.

SO ORDERED.

### JUDGMENT ON DECISION BY THE COURT

This action came on for consideration before the Court, United States District Judge John C. Coughenour presiding. The issues having been duly considered and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED that Boeing's motion for summary judgment is GRANTED and this case is dismissed.