

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ENRIQUETA SANCHEZ, | ) | |
| | ) | No. 35862-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MCDOUGALL & SONS, INC., | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Enriqueta Sanchez appeals the summary judgment dismissal of her disability discrimination and wrongful termination claims against her former employer, McDougall & Sons (McDougall). McDougall had moved for summary judgment on two grounds: first, that Ms. Sanchez filed for and received workers' compensation benefits based on the same harms alleged in the action below; and second, that she failed to present evidence creating a genuine issue as to an essential element of each of her claims. We affirm summary judgment on the second basis.

FACTS AND PROCEDURAL BACKGROUND

Because we review the summary judgment dismissal of Enriqueta Sanchez's claims, we view disputed evidence in the light most favorable to her.

On July 7, 2012, Ms. Sanchez was working at McDougall's C&M facility as a seasonal fruit packer when a box fell and struck her in the head. She reported her injury to her supervisor and drove herself to the hospital. The doctor who saw her completed an activity prescription form stating that for the next several days, she was not released to any work. A workers' compensation claim was submitted to the Department of Labor and Industries (Department).

The Department accepted Ms. Sanchez's claim. Her health care providers indicated that she could perform modified duty work beginning on July 12 and on activity prescription forms prepared over the next several months.

Ms. Sanchez returned to work on July 17, and McDougall gave her a light duty assignment placing plastic bags into boxes. McDougall has created light-duty positions in order to keep employees with pending worker's compensation claims on full salary and avoid an adverse escalation in its experience rating with the Department. A few days after being assigned to the plastic bag placement duty, Ms. Sanchez was accidentally struck in the head again, aggravating her injury and further limiting the type of work she could do.

2

On July 20, Ms. Sanchez received medical clearance to work as a washroom attendant at McDougall's Olds Station facility, a position created by McDougall to provide continued employment for workers unable to perform any other light duty work. As washroom attendant, Ms. Sanchez was assigned to sit in a chair at the entrance to the women's restroom and make sure that employees removed their aprons before entering, and washed their hands and used sanitizer before exiting. Duties also include handing out hair nets and replacing sanitizer gel packs. At the time the summary judgment motion was briefed, McDougall had placed 27 injured workers in the washroom attendant position since creating the position in 2008, including Ms. Sanchez.

Ms. Sanchez received a letter offering her the washroom attendant position on August 29. She would later testify that she did not want to accept the position, but understood that if she did not accept it she would be viewed as quitting. She signed the offer letter, signifying acceptance of the position.

Ms. Sanchez had previously worked a night shift at the C&M facility, but when she began working in the washroom attendant position there was no night shift at the Olds Station facility. As a result, she worked the day shift until apple and pear packing season began and a night shift resumed at Olds Station. After being returned to the night shift, it is undisputed that she made a request to be returned to the day shift. The parties dispute her reason for the request and the particulars of McDougall's response, but both agree that her request for the shift change was not granted.

No. 35862-3-III
*Sanchez v. McDougall & Sons*

In November 2012, the Department instructed Ms. Sanchez to undergo an independent medical evaluation (IME). The IME found "no basis for any impairment rating . . . [and] no basis for any work limitations as a result of" Ms. Sanchez's injury. Clerk's (CP) at 153. On December 28, 2012, the Department notified Ms. Sanchez it was closing her claim on the basis of the IME.

Ms. Sanchez wrote the Department on January 14, 2013, to protest the closing of her claim. Her letter stated in part:[1]

> I cannot go back to my job packing apples and pears in the condition that I am in. My working career and my personal (life) are simply not the same. I cannot exercise, dance or carry (my) granddaughters. The accident has changed my life completely, it has caused (me anxiety, panics, and depression).
>
> The independent medical exam results indicate that the accident did not result in a permanent disability, but I do have (a disability). I cannot do the work I used to do before the accident, I have permanent nausea.

CP at 298.

That night, while working the night shift, Ms. Sanchez was called into a meeting with Julie Loreth, McDougall's human resources (HR) manager, and Ana Chavez, a Spanish-speaking HR assistant who served as an interpreter. Ms. Sanchez contends that "[a]t the January 14, 2013 meeting, I was told I was being 'laid off' because my

---

[1] Ms. Sanchez is Spanish-speaking, so all of the agreements and all communications to or from her were in Spanish. We quote the English translations that are included in the record.

4

originally hired night group had all been laid off and they had closed the C&M night shift. . . [. D]espite saying I was 'laid off' at the meeting of January 14, 2013, Defendant's representatives made it absolutely clear that I was not to return to work at any time to Defendant, ever." CP at 685-86.

Several weeks later, Ms. Sanchez filed a complaint of discrimination with the Washington State Human Rights Commission. The Commission later notified Ms. Sanchez that it did not find reasonable cause for a claim of discrimination, after which, in August 2014, she filed this action against McDougall. She alleged disability discrimination based on a failure to accommodate and discharge from employment, and wrongful discharge in violation of public policy and RCW 51.48.025.

Meanwhile, Ms. Sanchez's appeal of the closing of her worker's compensation claim proceeded. A psychological evaluation by Dr. Silverio Arenas Jr. that Ms. Sanchez later filed in opposition to McDougall's motion for summary judgment reveals that during the pendency of her worker's compensation claim and appeal, three professionals evaluated claims that she had suffered emotional harm. Chronologically, she was diagnosed by Haley, ARNP, a nurse practitioner, on January 11, 2013; received a psychiatric evaluation by Friedman, D.O., conducted on October 1, 2013; and received a second psychiatric evaluation by Romero, M.D., dated June 13, 2014.

According to Dr. Arenas's report, Dr. Friedman observed in October 2013 that Ms. Sanchez

5

"developed stages of heightened anxiety, panic and phobias when she was forced to go back to work, working in a bathroom," with increased claustrophobia, anger, and panic.  Diagnoses of Panic Disorder and Claustrophobia were given.  Her panic disorder was said to "prevent her from returning to employment."

CP at 424.  Dr. Arenas described Dr. Romero's evaluation as attributing Ms. Sanchez's depressive and anxiety disorders directly and causally to her industrial injury "'and its sequel.'"  CP at 425.  Describing and quoting Dr. Romero's evaluation, Dr. Arenas stated:

"She described intermittently feeling enclosed and, . . . short of breath to the point that she had to find a window to get some air."  Anxiety attacks and "missing work intermittently secondary to her dizziness" were reported.  Records reviewed noted complaints that she could not stand a limited duty job in the bathroom for eight hours, feeling like her employers were out to get her, trying to make her quit.

CP at 424.  Dr. Arenas reported learning from Ms. Sanchez that "[s]he tolerated being [in the worksite bathroom position] as much as she could, and tried to get her medical providers to remove her from that situation, but was ignored."  CP at 426.

In October 2014, the Department notified Ms. Sanchez that it was accepting responsibility "for the condition diagnosed as ANXIETY DISORDER AND DEPRESSIVE DISORDER, determined by medical evidence to be related to the accepted condition under [the industrial injury occurring on 07/07/2012; employer McDougall & Sons] for which this claim was filed."  CP at 683.  In September 2015, she

was notified that she would receive time loss benefits from the date of her July 7, 2012 injury through August 26, 2015, and ongoing benefits thereafter, and that her claim would be considered for pension eligibility. In November 2015, the Department notified Ms. Sanchez that she was determined to be "totally and permanently disabled," would be placed on pension effective December 16, 2015, and would cease receiving time loss benefits at that time. CP at 162.

In June 2017, McDougall moved for summary judgment in this matter. Among other evidence, it submitted portions of Ms. Sanchez's deposition testimony in which she admitted being unable to return to her job as a packer following her July 2012 injury and its aggravation. Ms. Sanchez testified:

Q. After your second injury, were you able to continue performing duties as a packer?
A. No.
Q. Did you—are you aware of whether a doctor submitted any sort of notes relating to your—what activities you couldn't do because of your injury?
A. Again, please repeat.
Q. Did anyone—do you know if anyone told McDougall that there were things you couldn't do because of your work injuries?
A. No, I don't know.
Q. In your view—in your opinion, what were the things you couldn't do because of your work injury?
A. Pack, sort.
Q. Could you spend all day standing?
A. No.
Q. Could you work above your shoulder?
A. With the right hand.
Q. Could you work with your head down the whole time?
A. No.

CP at 195-96.

McDougall also submitted portions of the deposition of Ms. Sanchez's husband,

Augustin Barragan, including the following:

Q.  Besides finding a different job for her stickering or something like that,
    is there anything that you're aware of McDougall could have do[ne] to
    help Ms. Sanchez go back to packing in January of 2013?
A.  I don't think she could have during that—at that time, not packing.

CP at 333.

The trial court requested or accepted additional documentation from the parties

and eventually granted summary judgment dismissing Ms. Sanchez's complaint.

Motions by Ms. Sanchez for reconsideration and to strike the Department's October 2014

decision accepting responsibility for emotional damage claims were denied.  She appeals.

## ANALYSIS

We review an order granting summary judgment de novo, engaging in the same

inquiry as the trial court.  *Volk v. DeMeerleer*, 187 Wn.2d 241, 254, 386 P.3d 254 (2016).

Summary judgment is appropriate when there is "no genuine issue as to any material fact

and . . . the moving party is entitled to a judgment as a matter of law."  CR 56(c).  We

view all facts and all reasonable inferences in the light most favorable to the nonmoving

party.  *Volk*, 187 Wn.2d at 254.  Summary judgment is appropriate only if reasonable

persons could reach but one conclusion from all the evidence.  *Vallandigham v. Clover

Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

No. 35862-3-III
*Sanchez v. McDougall & Sons*

One basis for McDougall's motion for summary judgment was the exclusivity provision of the Industrial Insurance Act, RCW 51.04.010, which "bars all independent causes of action against the employer for damages arising out of unintentional injury to an employee." *Provost v. Puget Sound Power & Light Co.*, 103 Wn.2d 750, 752, 696 P.2d 1238 (1985). The appeal presents a novel question as to whether the "separate injuries" exception[2] to the exclusivity provision applies where an emotional injury was arguably separate, but the worker nonetheless submits it as causally related and the Department accepts responsibility for it. We need not reach McDougall's defense based on the exclusivity provision, however, because we agree with McDougall that Ms. Sanchez failed to present a genuine issue of material fact as to an essential element of each of her discrimination claims.[3] We address the causes of action alleged in her complaint in turn.

I.      FAILURE TO OFFER REASONABLE ACCOMMODATION IN VIOLATION OF
        RCW 49.60.180

Employers have an obligation to accommodate handicapped employees, and failure to provide an accommodation amounts to discrimination under RCW 49.60.180.

---

[2] *See, e.g.*, *Wheeler v. Catholic Archdiocese of Seattle*, 65 Wn. App. 552, 568, 829 P.2d 196 (1992), *rev'd in part on other grounds*, 124 Wn.2d 634, 880 P.2d 29 (1994).

[3] Ms. Sanchez also argued that the "deliberate intention" act exception to exclusivity found in RCW 51.24.020 applied, but since we affirm dismissal on other grounds, we need not address it.

9

*Dean v. Mun. of Metro. Seattle*, 104 Wn.2d 627, 632, 708 P.2d 393 (1985).  To prevail on

a failure to accommodate claim, an employee must prove

> "that (1) the employee had a sensory, mental, or physical abnormality that
> substantially limited his or her ability to perform the job; (2) the employee
> was qualified to perform the essential functions of the job in question; (3)
> the employee gave the employer notice of the abnormality and its
> accompanying substantial limitations; and (4) upon notice, the employer
> failed to affirmatively adopt measures that were available to the employer
> and medically necessary to accommodate the abnormality."

*Davis v. Microsoft Corp.*, 149 Wn.2d 521, 532, 70 P.3d 126 (2003) (emphasis omitted)

(quoting *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 192-93, 23 P.3d 440 (2001),

*abrogated by Mikkelsen v. Pub. Util. Dist. #1 of Kittitas County*, 189 Wn.2d 516, 404

P.3d 464 (2017)).

The burden is on the employee to present a prima facie case of discrimination,

including medical evidence of a handicap.  *Pulcino v. Fed. Express Corp.*, 141 Wn.2d

629, 642, 9 P.3d 787 (2000).  Here, at the time McDougall terminated Ms. Sanchez's

employment, an IME performed by an orthopedic surgeon and neurologist had found "no

basis for any impairment rating" and "no basis for any work limitations as a result of this

industrial injury."  CP at 153.  Ms. Sanchez did not provide McDougall with any

countervailing medical evidence at the time her employment was terminated.

In opposing summary judgment, Ms. Sanchez submitted a psychological

evaluation performed in October 2016 by Dr. Arenas.  He diagnosed her as having severe

chronic pain, depressive and anxiety conditions that existed since her July 2012 injury

and worsened after her washroom attendant assignment. But that report, Ms. Sanchez's deposition testimony, and the Department's eventual determination to place her on pension as totally and permanently disabled, demonstrate her inability to establish the essential second element of a reasonable accommodation claim: that she "was qualified to perform the essential functions of the job in question." *Davis*, 149 Wn.2d at 532 (emphasis omitted).

McDougall presented the trial court with its fruit packer job description, which identified the position's essential functions and physical requirements. The physical requirements of the position included (but were not limited to) "frequent" walking, standing, twisting neck (left to right), twisting of back, and neck flexion/extension; and "occasionally" stooping/bending, crouching, lifting up to 10 pounds above the shoulders, and reaching above the shoulder. CP at 129-30. Ms. Sanchez testified in deposition that she was unable to spend the entire day standing, could only work above her shoulders with her right hand, and could not work with her head down. Asked whether, after her second injury, she was able to continue performing duties as a packer, she answered, "No." CP at 195-96. Elsewhere, she testified, "I couldn't pack and I can't pack." CP at 217. She appealed the closing of her worker's compensation claim on the basis that she "[could not] go back to [her] job packing apples and pears in the condition that [she was] in." CP at 298.

In responding to McDougall's motion for summary judgment, Ms. Sanchez presented no evidence of a reasonable accommodation that would have enabled her to perform the essential functions of the fruit packer position.[4] She failed to demonstrate that the only accommodation she ever requested—a transfer to the day shift, during the time she worked as a washroom attendant—was medically necessary. At most, she stated in a supplemental declaration that if she had been asked for a doctor's note supporting that request, she could have provided one. Affidavits offered in opposition to summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." CR 56(e). Implied hearsay that her doctor would have provided a supportive note does not meet the requirements of the rule.

---

[4] McDougall did not offer the washroom attendant position as a reasonable accommodation. As McDougall emphasized at oral argument, like other light duty jobs, the washroom attendant job was created to reduce employees' time loss claims and keep them earning full salary. Wash. Court of Appeals oral argument, *Sanchez v. McDougall & Sons*, No. 35862-3-III (Dec. 5, 2018) at 20 min., 30 sec. through 21 min. (on file with court). "Reasonable accommodation" does not require an employer to create light duty positions; it requires only that the employer provide a reasonable accommodation that will enable the worker to perform the essential functions of her job. *Fey v. State*, 174 Wn. App. 435, 452, 300 P.3d 435 (2013).

When deposed, Ms. Sanchez admitted that when she was given light duty, she understood that if she ever got better, she would return to packing.

No. 35862-3-III
*Sanchez v. McDougall & Sons*


II.     DISCRIMINATORY DISCHARGE

An employee has a cause of action under RCW 49.60.180 when an employer

discharges an employee for a discriminatory reason.  However, "the prohibition against

discrimination because of such disability shall not apply if the particular disability

prevents the proper performance of the particular worker involved."  RCW 49.60.180(1).

A claim for disability discrimination requires the employee to establish "'that the

employee was: [(1)] disabled, [(2)] subject to an adverse employment action, [(3)] doing

satisfactory work, and [(4)] discharged under circumstances that raise a reasonable

inference of unlawful discrimination.'"  *Brownfield v. City of Yakima*, 178 Wn. App.

850, 873, 316 P.3d 520 (2013) (alterations in original) (quoting *Callahan v. Walla Walla

Hous. Auth.*, 126 Wn. App. 812, 819, 110 P.3d 782 (2005)).

A "disability" is defined as "the presence of a sensory, mental, or physical

impairment that . . . is medically cognizable or diagnosable."  RCW 49.60.040(7)(a).

Here again, at the time Ms. Sanchez was told she was laid off[5] it was because the

Department-requested IME had found no basis for any work limitations and the

Department had closed her claim.

---

[5] Given the standard of review, we accept her testimony that while the words "laid off" were used, the clear implication was that the termination of her employment was permanent.

13

She opposed summary judgment with after-acquired medical evidence of a disability. But that and related evidence, including her own testimony, also established that she could not perform the essential functions of the packer position, as earlier discussed. She produced no evidence of the third element of a discriminatory discharge claim: that she was doing, or could do, satisfactory work in the packer position.

III.    RETALIATION IN VIOLATION OF PUBLIC POLICY AND RCW 51.48.025

Finally, Ms. Sanchez argues that McDougall retaliated against her for filing a worker's compensation claim in violation of RCW 51.48.025 and the public policy of the State of Washington. Although her briefing in this court and below is vague, she appears to contend that McDougall retaliated against her not only by terminating her employment, but also by assigning her to the washroom attendant position.

RCW 51.48.025(1) provides that "[n]o employer may discharge or in any manner discriminate against any employee because such employee has filed or communicated to the employer an intent to file a claim for compensation or exercises any rights provided under this chapter." RCW 51.48.025(2) provides an administrative remedy that may be pursued, but only if the employee "file[s] a complaint with the director alleging discrimination within ninety days of the date of the alleged violation." If, following investigation, the director does not find a violation of the statute, the employee may file suit on her own behalf. RCW 51.48.025(3). Ms. Sanchez does not contend that she timely pursued this administrative remedy.

14

In *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 53-54, 821 P.2d 18 (1991), our Supreme Court held that the administrative remedy *for wrongful discharge* provided by RCW 51.48.025(2) is not exclusive. It held that the public policy against retaliation expressed in RCW 51.48.025(1) will support the common law action for wrongful discharge in violation of public policy that the court recognized in *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984). *Wilmot* did not recognize a common law tort for wrongful employment action falling short of discharge. Several years later, in *White v. State*, the Supreme Court refused to recognize a cause of action for wrongful *transfer* in violation of public policy, reasoning "that by recognizing a cause of action for employer actions short of an actual discharge, the court would be opening a floodgate to frivolous litigation and substantially interfering with an employer's discretion to make personnel decisions." 131 Wn.2d 1, 19, 929 P.2d 396 (1997) (citing *White v. State*, 78 Wn. App. 824, 839-40, 898 P.2d 331 (1995)). Ms. Sanchez identifies no authority under which her allegedly retaliatory assignment to the washroom attendant position would be actionable other than administratively, under RCW 51.48.025—a remedy she did not pursue.

Moreover, the essence of a wrongful retaliation claim is that the employer has intentionally wronged the employee. *Wilmot*, 118 Wn.2d at 74 (citing *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 915-16, 726 P.2d 434 (1986)) (wrongful discharge claim). Ms. Sanchez presents no legal authority that assigning an employee to a night shift, or

work that is somewhat isolated from other employees, or work that subjects an employee to objectionable smells, is inherently punitive. She presents no evidence that McDougall intentionally wronged her by assigning her to the washroom attendant position. McDougall's unrebutted evidence was that 27 injured workers had been assigned to the position since 2008, and none of them asserted that the assignment was retaliatory or objectionable.

Turning to Ms. Sanchez's claim of retaliatory *discharge*, the elements of a claim for wrongful termination in violation of public policy are that (1) the employee's discharge may have been motivated by reasons that contravene a clear mandate of public policy, and (2) the public-policy-linked conduct was a significant factor in the decision to discharge the worker. *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 725-26, 425 P.3d 837 (2018). In determining the second element, a burden-shifting procedure applies under which the employer may defeat the claim by proving that the termination was justified by an overriding consideration. *Id.* at 728.

Ms. Sanchez admitted when deposed that working as a cherry packer at the C&M facility before her injury, she knew what would happen at the end of the season: "I would have been laid off until they start up again." CP at 216. She agreed when deposed that when she was told by Ms. Loreth on January 14, 2014, that she was being laid off, Ms. Loreth told her "[she] was laid off because the night shift had been laid off." CP at 213. Ms. Sanchez does not dispute that McDougall's action in laying her off was consistent

16

with its layoff of other seasonal cherry hires, the position in which she worked at the time of her injury.

Instead, she contends that she was treated discriminatorily because it was made clear to her that unlike other laid off workers, she was not to return to work, ever. An employer may refuse to hire a handicapped person if the handicap prevents the "proper performance" of the job. RCW 49.60.180(1) ("the prohibition against discrimination because of such disability shall not apply if the particular disability prevents the proper performance of the particular worker involved"); *Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn.2d 102, 118, 720 P.2d 793 (1986) (RCW 49.60.180(1)'s proviso applies where a refusal to hire is alleged). If a handicap prevents performance of the essential functions of the job, an employer can refuse to hire or rehire. *Id.* at 119. The undisputed evidence establishes that Ms. Sanchez could not have returned to the position given the physical limitations to which she testified in deposition.

McDougall was entitled to dismissal of Ms. Sanchez's complaint.

Both sides seek an award of attorney fees and costs under RAP 18.1. Ms. Sanchez identifies RCW 49.48.030 and RCW 49.60.030 as bases for an award, but because she is not successful on appeal, the provisions do not apply. McDougall relies on *Collins v. Clark County Fire Dist. No. 5*, 155 Wn. App. 48, 104-05, 231 P.3d 1211 (2010) but notwithstanding the overbroad language of the opinion on which it relies, the award in

No. 35862-3-III
*Sanchez v. McDougall & Sons*

*Collins* was based on RCW 49.60.030(2). It authorizes fee and cost awards to persons "injured by any act in violation of [chapter 49.60 RCW]." McDougall does not qualify.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Korsmo, J.

18