[No. 2607–3. Division Three. February 21, 1979.]

NATIONWIDE MUTUAL INSURANCE COMPANY, *Respondent,* v. MARK J. KELLEHER, *Appellant.*

---

*Peterson & Shea, Edward F. Shea, John N. Lindsay,* and *Mark P. Kuffel,* for appellant.

*Leavy, Taber* and *John G. Schultz,* for respondent.

ROE, J.—Plaintiff Nationwide Mutual Insurance Company, hereafter called Nationwide, issued a policy to Joe R. Berry. The policy provided for a comprehensive property damage and bodily injury liability with a $20,000 limit per person. Additionally, the policy carried an endorsement for personal injury protection (PIP). While Rodney J. Berry was driving the car, with defendant in this case, Mark J. Kelleher, 'riding as a passenger, the automobile left the roadway and was involved in a one–car collision, causing serious injuries to the defendant. The total damages

incurred by Kelleher exceeded the amount of $32,400, which was his maximum recovery under the policy.

Nationwide paid the maximum under the PIP for medical and surgical costs of $10,000. In addition, the insurer paid $2,400 under the PIP endorsement as 85 percent of the insured's wage loss. Kelleher then claimed $20,000 for bodily injury under the liability endorsement. Nationwide seeks by this declaratory judgment action to offset or deduct from this $20,000, $12,400, the amount already paid by it under PIP, so that its overall maximum liability to Kelleher would be the applicable bodily injury liability, namely, $20,000. The defendant appeals from a summary judgment in favor of plaintiff.[1] The trial court found that under paragraph 6 of the Trust Agreement, since the company was entitled to be subrogated to the proceeds of any

---

[1]The pertinent policy provisions are:

"6. Trust Agreement. In the event of payment to any person of any benefits under this endorsement.

"(a) the Company shall be entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made to the extent the damages recovered include any expense, amount or payment for which such benefits were paid;

" . . .

"7. Subrogation. In the event of any payment under this endorsement, the Company shall be entitled to reimbursement and subrogated to the extent of such payment, to all the rights of recovery therefor which the person to or on behalf of whom such payment is made may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

" . . .

"SECTION II

"In consideration of the coverage afforded under Section I of this endorsement:

"(a) any amount payable under the Family Protection Coverage (Uninsured Motorists) afforded by this policy shall be reduced by any amount paid, payable or required to be provided under any AUTOMOBILE PERSONAL INJURY PROTECTION coverage afforded by this or any other policy; and

"(b) any Automobile Medical Payments coverage afforded by this policy is hereby deleted."

settlement or judgment the insured may get from the exercise of any right of recovery against *any person* for the bodily injury, that the insurance carrier is now called upon to pay for bodily injury, but since the injured person has already recovered under the PIP endorsement (not from a third person but from the carrier itself), that this is included in the phrase "any person" under paragraph 6. Therefore the setoff should be allowed. This seems to be an imaginative and strange construction. Had the carrier intended to include itself as one of the "any persons" from whom recovery had already been had, it could easily have added the phrase "including the carrier." The provisions of the insurance policy should not be strained to reach a result favorable to the carrier.

Section II refers to deduction under Family Protection (Uninsured Motorists), not bodily injury, which is the issue here.

██ ██ Language in insurance policies must be interpreted in accordance with the way the average man can understand it, rather than in a technical sense. *Dairyland Ins. Co. v. Ward,* 83 Wn.2d 353, 517 P.2d 966 (1974). Insurance policies are more strongly construed against insurance companies because they are written for them by men learned in the law and trained in drafting contracts of this kind. *Starr v. Aetna Life Ins. Co.,* 41 Wash. 199, 83 P. 113 (1905). Any ambiguities in the policy will be construed against the insurer, particularly with reference to exceptions and limitations to the policy's coverage. *Witherspoon v. St. Paul Fire & Marine Ins. Co.,* 86 Wn.2d 641, 548 P.2d 302 (1976).

██ Sections 6 and 7 were recently interpreted in *Thiringer v. American Motors Ins. Co.,* 91 Wn.2d 215, 588 P.2d 191 (1978), where the insured suffered greater damages than the face of the policy. The insured had accepted settlement of $15,000 from the tort–feasor, who had no other reachable assets. The carrier sought to offset this amount against the amount payable under the PIP coverage, but the offset was denied on the basis that only after

the insured had made a full recovery for his damages did the insurer's right of subrogation arise. The general rule is that although the carrier is entitled to be reimbursed to the extent that its insured recovers the same loss from a tort-feasor, it can recover only the excess remaining after the insured is fully compensated for his loss. This policy fosters adequate protection to the automobile victim. In interpreting identical contractual provisions, the court said:

> [I]f payment under the PIP coverage is made to the insured, the insurer shall be reimbursed to the extent that the insured recovers such damages from a person legally responsible for the injury. It does not provide that, if the insured recovers less than his total damages from such party, the amount recovered shall be allocated first to those losses covered by the PIP endorsement and then to other damages suffered by the insured. Such a provision, were it included, would be obviously unfair, since the insured pays a premium for the PIP coverage and has a right to expect that the payments promised under this coverage will be available to him if the amount he is able to recover from other sources, after diligent effort, is less than his general damages.

*Thiringer v. American Motors Ins. Co., supra* at 220. The court adopted a more equitable approach where the instant policy provisions are utilized to permit the insured to recoup his general damages from the tort-feasor before allowing subrogation, provided there is no prejudice to the rights of the insurer. This is his reasonable expectation. This principle controls here. First, the insured should receive the maximum limits under the policy if his damages are to that extent, so that he will be made whole. The legal principle which denies the carrier subrogation or a deduction from the face of the policy of the limited amount a third person was able to pay to the injured when he is not made whole, would direct the same result by denying to the carrier the right to deduct amounts paid under the PIP provision against the amounts payable under a bodily injury provision.

In reaching this conclusion we are mindful Kelleher was a guest passenger in the named insured's car. Bodily injury liability coverage was available only if the named insured is legally obligated to pay the injured party. *Roberts v. Johnson,* 91 Wn.2d 182, 588 P.2d 201 (1978), stated that gross negligence was not the test; rather, an ordinary care standard of common law. Our opinion today proceeds on the assumption, which seems to be tacitly admitted by the parties, that the named insured was legally obligated to the injured party.

In fairness to the trial court, it must be said that it reached its conclusion without the benefit of *Thiringer,* decided subsequent to its decision.

 The insured paid for two separate coverages, bodily injury and PIP; thus, there are essentially two contracts with Nationwide. Offsets of two contracts against each other would leave the insured in a position of having paid for coverage he did not receive. This would oppose the principle permitting stacking. *Cammel v. State Farm Mut. Auto. Ins. Co.,* 86 Wn.2d 264, 543 P.2d 634 (1975). Where the carrier is the source of both payments, the offsets may be allowed in some circumstances, in some jurisdictions, under the rationale of *Yarrington v. Thornburg,* 58 Del. 152, 205 A.2d 1, 11 A.L.R.3d 1110 (1964). Without determining whether that case is correct in principle or prevailing in Washington, we hold that under *Thiringer v. American Motors Ins. Co., supra,* no offset should be permitted which would deny the injured full recovery to the extent of the policy limits.

Judgment is reversed.

GREEN, C.J., and MCINTURFF, J., concur.