[No. 10210-9-I.   Division One.   May 23, 1983.]

EUGENE LANGE, ET AL, *Appellants,* v. DAVID RAEF, ET AL, *Respondents.*

*Newman & Bradshaw, P.S.,* and *Joel E. Bradshaw,* for appellants.

*Stafford, Frey & Mertel* and *John G. Cooper,* for respondents.

RINGOLD, J.—Plaintiffs Eugene Lange and Rick D. McCallum appeal the judgment entered on a jury verdict in their favor, arguing that the trial court erred in crediting against the verdict certain amounts received by them from the defendants' insurer prior to trial. We agree with the plaintiffs' contention, vacate the judgment, and remand for entry of judgment in the full amount of the jury verdict.

In July 1979 Lange and McCallum were passengers in an automobile driven by defendant David Raef and owned by defendant Harold Raef. They sustained serious injuries in a 1–car rollover accident. Pursuant to the terms of the Automobile Personal Injury Protection (PIP) endorsement to Raefs' automobile insurance policy, the insurer paid wage loss and medical expense benefits to Lange and McCallum prior to a determination of liability.

Lange and McCallum subsequently brought an action against Raefs alleging negligence. Prior to trial, plaintiffs without opposition successfully moved in limine to exclude evidence of the PIP payments pursuant to the collateral source rule. Defendants admitted liability, and trial proceeded on the issue of damages, with disputed testimony as to some items of damage. Although the fact of the PIP payments was not introduced in evidence, the medical

expense and wage loss damages underlying the PIP payments were generally submitted to the jury along with the other evidence of loss. The jury was instructed as to the elements of damages, including medical expenses and wage loss. The jury was further instructed as to the precise amount of medical expenses incurred by each plaintiff, which was greater in each case than the amounts paid under the PIP coverage. Neither party requested a special verdict or special interrogatories segregating the various elements of damages. The jury returned a general verdict in favor of each plaintiff "for injury."

Following the verdict but before entry of judgment, Raefs moved the court for leave to amend the pleadings to allege the PIP payments as an offset against the jury verdict for partial payments made by their insurer on their behalf. The court granted this motion, over plaintiffs' objection, and entered judgment on the verdict in an amount equal to the jury verdict minus the PIP payments.

This appeal raises an issue of first impression in Washington: whether, in the absence of a stipulation by the parties, a defendant is entitled to an offset on a judgment in favor of an injured plaintiff to reflect amounts paid to the plaintiff by defendant's insurer under the PIP endorsement of defendant's policy, where the fact of the PIP payments was not submitted to the jury and the jury returned a general verdict?

### INSURER'S STATUS IN THIS ACTION

Raefs argue that "since Fireman's Fund has made the PIP payments and is also the liability insurance carrier, the most direct manner in which to allow recovery of its subrogated claim[1] is to simply credit the judgment with the ear-

---

[1]The pertinent policy provisions are:

"6. Trust Agreement. In the event of payment to any person of any benefits under this endorsement:

"(a) the Company shall be entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made to the extent the damages recovered

lier payments." Raefs cite *Nationwide Mut. Ins. Co. v. Kelleher,* 22 Wn. App. 712, 591 P.2d 859 (1979) for the proposition that the insurer is entitled to his subrogation interest once the injured party has been made whole. In *Nationwide,* however, the insurer had brought a declaratory judgment action against the injured party to offset bodily injury coverage by payments made under PIP. The insurer is not a party to the action at bench and has no standing to make a post–verdict motion to assert its subrogation rights. Neither are Raefs entitled to the benefit of the terms of the insurance contract with respect to subrogation and trust agreement. The offset granted by the trial court was therefore proper only if Raefs themselves were entitled to assert the PIP payments in mitigation of damages.

### COLLATERAL SOURCE RULE

Under the collateral source rule, a tortfeasor may not reduce damages, otherwise recoverable, to reflect payments received by a plaintiff from a collateral source, that is, a source independent of the tortfeasor. *Ciminski v. SCI Corp.,* 90 Wn.2d 802, 585 P.2d 1182 (1978). Where the source of the collateral payments is the tortfeasor or a fund created by him to make such payments, however, the collateral source rule is inapplicable, and such payments may be proven at trial to prevent double recovery by the injured party from the tortfeasor. *See, e.g., Yarrington v. Thornburg,* 58 Del. 152, 205 A.2d 1, 11 A.L.R.3d 1110 (1964).

In *Ekblade v. Anderson,* 28 Conn. Supp. 177, 255 A.2d 865 (1969), the trial court held that the collateral source

include any expense, amount or payment for which such benefits were paid;
   " . . .

   "7. Subrogation. In the event of any payment under this endorsement, the Company shall be entitled to reimbursement and subrogated to the extent of such payment, to all the rights of recovery therefor which the person to or on behalf of whom such payment is made may have against any person or organization, and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights."

rule did not apply where the source of the payments was defendant's insurer, and granted defendant's motion for leave to amend his answer to allege payment of medical expenses. The court noted the risks created by the injection of the fact of insurance into the action, 28 Conn. Supp. at 181:

> Parenthetically, it is observed that the pleading as proposed may result in an attention–compelling demonstration of the presence of insurance coverage in a given action. This court is not called upon to discuss the wisdom or desirability, or the lack of either, of such probable disclosure. However, and until other procedural methods are devised and approved to effect that which appears to be the desired end, namely, that of reducing the potential of a recovery so that only a single payment of medical expenses is considered where, as here, there is no collateral source involved, the amendment to the pleading as offered would appear to be proper.

The jury therefore could have heard testimony as to the amount of the PIP payments and received instructions to exclude that amount from its verdict. Raefs, however, chose not to contest plaintiffs' motion in limine, so evidence of the PIP payments was excluded. Having failed to object to the trial court's ruling on the motion in limine, Raefs may not contest the ruling now. The collateral source rule as applied by the trial court became the law of the case. Since Raefs could not prove the PIP benefits to the jury, they should not have been able to assert them to the trial court in mitigation of the amount of the jury's general verdict.

### PROPRIETY OF TRIAL COURT'S ATTEMPT TO SEGREGATE DAMAGES

The parties did not enter into a stipulation or similar arrangement[2] to insure that the judgment would reflect

---

[2]By stipulation the parties could have circumvented the problem in several different ways, such as (a) special interrogatories; (b) excluding from the damage instruction any reference to wage loss and medical care; or (c) leaving the matter to a nonjury determination by the trial court.

the payments under PIP. In addition, absent a stipulation by the parties or a special verdict segregating damages, the trial court had no basis for crediting the PIP payments against the jury's verdict. Lange and McCallum received double recovery, if at all, only to the extent that the jury's verdict included amounts also paid under PIP. Neither we nor the trial court can ascertain the different damages components of the jury's award to properly credit the PIP payments against the general verdict. To do so would be to invade the province of the finder of fact. *See Foster v. Giroux,* 8 Wn. App. 398, 506 P.2d 897 (1973).

In *Matthews v. Watkins Motor Lines, Inc.,* 419 So. 2d 1321 (Miss. 1982), the trial court had granted the defendants' post–judgment motion and ordered reduction of a judgment for plaintiff to the extent of advance medical payments made by the tortfeasor's insurer. The Mississippi Supreme Court reversed and reinstated the judgment and verdict for the full amount. The court stated, 419 So. 2d at 1323:

> To uphold the credits allowed below on appellees' post–trial "motion" is to allow the appellees to deny all liability (as was done here by their mere general answer) without pleading any set–off or affirmative matter (except alleging that plaintiff's driver was guilty of negligence) and then seeking reduction of the jury award by action of the judge alone. Such procedure has the effect of defeating the plaintiff's right to a jury trial on the fact issue of how much, if any, should be subtracted from the plaintiff's award as "bills" relating to her son or former husband. No case from this jurisdiction is cited which would be authority for us to hold, upon the skimpy record before us, that a plaintiff can be deprived even in part of the right of jury trial on an issue of fact.
>
> Conceding here that the plaintiff should not recover for "bills" not related to her, the amount thereof would be a jury issue. . . .
>
> In the context presented, we will not second guess jurors as to how they arrived at their $43,000 verdict.

Similarly, in *Dupuis v. Nielson,* 624 P.2d 685 (Utah 1981), the defendant contended on appeal that the trial court should have reduced the plaintiff's $1,000 in general damages by $708 in no–fault benefits which had been paid by plaintiff's insurer to plaintiff for loss of household services. Defendant's insurer had reimbursed plaintiff's insurer for this amount, pursuant to the no–fault statute. The Supreme Court of Utah affirmed the trial court's refusal to reduce the judgment, stating:

> To the extent that plaintiff would receive double recovery of a particular type of damage, an adjustment of the judgment in this case was appropriate. However, the judgment may only be reduced to the extent it specifically and identifiably included special damages of the same types as those for which no–fault benefits had previously been received. . . . Defendant is not entitled to a reduction of plaintiff's award of general damages to offset no–fault insurance payments for different types or categories of damages.

*Dupuis v. Nielson, supra* at 686–87.

In sum, having failed to establish the amount of duplication of PIP benefits in the jury's verdict either by submitting the question to the trier of fact or by stipulation, Raefs cannot receive a credit to the jury award by way of post–trial motion. The trial court erred when it presumed that the jury verdict included recovery for those items which had been paid under PIP. Once the defendants acquiesced in plaintiffs' motion in limine and the parties failed to provide for offset by agreement or in the instructions the defendants were precluded from asserting their right to credit following the general jury verdict. We express no opinion concerning the insurer's rights against Lange and McCallum in a collateral action brought on the insurance contract.

The judgment is vacated and the cause is remanded for

708

entry of judgment on the verdict consistent with this opinion.

ANDERSEN, C.J., and CALLOW, J., concur.

Reconsideration denied July 5, 1983.

Review granted by Supreme Court October 7, 1983.