[No. 18828-7-II. Division Two. October 18, 1996.]

JEFFREY F. MAZIARSKI, ET AL., *Appellants*, v. EDNA L.
BAIR, ET AL., *Respondents*.

*Dan M. Albertson,* for appellants.

*D. Michael Reilly, Michael B. King,* and *Lane Powell Spears Lubersky*, for respondents.

MORGAN, J. — In this personal injury action, the plaintiffs recovered a jury verdict for $8,653. The defendant then sought an offset for pretrial Personal Injury Protection (PIP) payments in the amount of $7,753. The

trial court entered judgment on the jury's verdict, but also granted the requested offset. The plaintiffs now appeal the order granting the offset. We reverse that order due to defendant's failure to carry her burden of proof. .

On May 14, 1992, Jeffrey Maziarski, Jr., a minor, was struck by a car while riding his bicycle. The car was driven by Edna Bair.

At the time of the accident, Bair was insured by the Hartford Insurance Company. Her policy provided both liability coverage and Personal Injury Protection coverage.

As a result of the accident, Maziarski incurred medical bills in the amount of $7,753. Hartford paid this amount under Bair's PIP coverage before any determination of fault had been made.

On April 9, 1993, Maziarski and his parents, Jeffrey Maziarski, Sr. and Guyda Maziarski, sued Bair for negligence. Bair's answer did not allege an offset for Hartford's PIP payments. It did, however, allege contributory negligence and other affirmative defenses.

Before trial, Bair asked the trial court for an order barring the plaintiff "from mentioning anything about payment of medical expenses."[1] The trial court granted the order.

The case went to trial in September 1994. Neither party mentioned Hartford's PIP payments. Using a special verdict form, the jury apportioned fault 28% to Bair and 72% to Maziarski. It awarded damages of $30,903, which included the $7,753 in medical bills paid by Hartford before trial. Its ultimate verdict was for $8,653 (28% of $30,903).

On October 5, 1994, Bair proposed, for the first time, that the trial court subtract Hartford's PIP payments from the amount of the verdict. At a hearing held on Friday, October 7, 1994, Maziarski's counsel began by stating to the court, "I just received a new version of [opposing

[1]Report of Proceedings at 235.

counsel's] proposed judgment Wednesday, and it purports to do a number of things which I'm not sure the Court is in a position to address at this point in time."[2] Maziarski's counsel, however, did not move for a continuance. Instead, he handed up his own proposed judgment, and the hearing proceeded as scheduled.

During the hearing, the parties and the court discussed whether the matter of an offset should have been determined by the jury. The court stated, "I don't see how we could have asked the jury to do that. . . . [O]bviously, it interjects insurance into [the case], and I . . . can't really envision trying to do that."[3]

During the hearing, the parties and the court briefly discussed whether Bair's insurance policy should be produced. Counsel for Maziarski stated that if it was not produced, "[W]e're just going to be back here on a motion for reconsideration with the policy." The court answered, "[I]f you want to come back and reconsider, I'll listen again."[4] No one moved for reconsideration, and no one has ever put the policy in the record.[5] It is undisputed, however, that the policy called for liability coverage in an amount exceeding the jury's verdict, and for PIP coverage in an amount exceeding the medical bills paid by Hartford before trial.

During the hearing, Maziarski argued that Bair was not entitled to an offset or, if she was, that she was entitled to offset no more than the medical bills awarded by the jury (28% of $7,753, or $2,171). Bair argued she was entitled to offset all of Maziarski's medical bills ($7,753). Adopting Bair's position, the trial court reduced the verdict ($8,653) by the total amount of the medical bills ($7,753) and

---

[2]Report of Proceedings at 2 (Oct. 7, 1994, Presentation of J.).

[3]Report of Proceedings at 4 (Oct. 7, 1994, Presentation of J.).

[4]Report of Proceedings at 9 (Oct. 7, 1994, Presentation of J.).

[5]At oral argument, we asked counsel for Bair if he would be willing to supplement the record with a copy of Bair's policy, assuming the court were willing to permit such supplementation. He responded by stating that supplementation would be inappropriate, although he would of course comply with any order the court might issue.

entered a net judgment of $900. Maziarski then filed this appeal.

## I

At the outset, Maziarski argues that Bair has lost her right to review. This is true, he says, because (A) she failed to plead her claim to an offset for PIP payments, (B) she failed to prove her claim in front of the jury, and (C) she obtained an order in limine precluding mention of PIP payments in front of the jury.

## A.

[1] Bair was required to plead payment in her answer. According to CR 8(c), a party must affirmatively set forth a claim or defense of payment, and Bair's claim to an offset was, in substance, a claim of payment.

 Bair's failure to plead payment does not by itself warrant reversal or alteration of the trial court's judgment. CR 15(b) provides that a matter tried with the express or implied consent of the parties shall be treated as if pled, even though it was not. At the hearing on October 7, Maziarski did not raise Bair's failure to plead payment; on the contrary, he handed up his own proposed form of judgment and proceeded to argue Bair's claim of payment on its merits. Bair's claim was tried with the implied consent of both parties, and we deem the pleadings to have been amended to conform to the proof.[6]

## B.

██ Bair was not required to prove her payment claim

---

[6]Even if Maziarski had raised Bair's failure to plead payment, we do not think the trial court would have erred by proceeding as it did. CR 15(a) provides that a party may amend a pleading with leave of court, and that the court shall give leave freely when justice so requires. At the hearing on October 7, Bair was essentially seeking leave of court to allege a payment claim not yet tried. The trial court had discretion to grant such leave, and to set trial for an appropriate time. The trial court did not abuse that discretion, even though it held trial immediately, where the facts relating to payment were undisputed and Maziarski did not move for a continuance.

at the trial of Maziarski's negligence claim. CR 42(b) provides:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross claim, counterclaim, or third party claim, or of any separate issue, . . . always preserving inviolate the right of trial by jury.

This rule vests a trial court with discretion to sever a negligence claim from a payment claim when severance will prevent improper and unnecessary prejudice—as, for example, when trial of a payment claim will needlessly inject insurance into the trial of a negligence claim. Here, the trial court exercised its discretion, albeit after-the-fact, when it allowed the payment claim to be pled and resolved after the negligence trial had been concluded, but before the entry of judgment. Moreover, it appears that the trial court would have exercised its discretion the same way even if the payment claim had been pled before the negligence trial; at the hearing on October 7, the court said that even if Bair had made her payment claim earlier, it would not have permitted the payment claim to be tried with the negligence claim. We conclude that Bair was not required to prove her payment claim until it was brought on for trial, and that her payment claim was not brought on for trial until October 7.

## C.

■ Bair did not lose any rights merely because she obtained an order in limine precluding mention of Hartford's PIP payments. The trial court properly determined that her payment claim should be handled separately from the negligence claim, and it did not err by using the order in limine as a way of effectuating its

determination. We conclude that Bair has not lost her right to review.

## II

Turning to the merits, we distinguish between Maziar-ski's negligence claim and Bair's claim to an offset. The jury awarded $8,653 on the negligence claim, and the trial court entered judgment on its verdict. The judgment reflects all damages attributable to Bair's fault, and neither party disputes its propriety. Accordingly, the sole issue concerns Bair's claim to an offset.

Generally, the party who claims an offset has the burden of proving his or her claim.[7] When the party seeks an offset against a judgment, he or she must show that he or she paid in the manner alleged, and that he or she is entitled to have the payment credited against the obligation embodied in the judgment. Here, of course, Bair is the claimant, and she bears the burden of proof. She has established without dispute that Hartford made $7,753 in PIP payments before trial, and that Hartford's payments should not be treated as coming from a collateral source.[8] The remaining question is whether she is entitled to have Hartford's PIP payments credited against the judgment.

---

[7]*Davis Erection Co. v. Jorgensen*, 248 Neb. 297, 534 N.W.2d 746, 751 (1995); *Home Fed. Sav. & Loan Ass'n v. McDermott & Miller*, 243 Neb. 136, 497 N.W.2d 678, 681-82 (1993); *Polk v. Torrence*, 218 Tenn. 680, 405 S.W.2d 575, 576 (1966); *Fulton v. Tennessee Walking Horse Breeders' Ass'n*, 63 Tenn. App. 569, 476 S.W.2d 644, 654 (1972); cf. *Eifler v. Shurgard Capital Management Corp.*, 71 Wn. App. 684, 695, 861 P.2d 1071 (1993) (party claiming restitution of money paid under mutual mistake has burden of proving claim); *Clark v. Luepke*, 60 Wn. App. 848, 851, 809 P.2d 752 (1991), *affirmed*, 118 Wn.2d 577 (1992) (party claiming restitution of money paid involuntarily has burden of proving elements of claim, including payment).

[8]Neither party invokes the collateral source rule, or otherwise claims that Hartford's payments should not inure to Bair's benefit. The collateral source rule provides that a tortfeasor may not reduce its liability due to payments received by the injured party from a collateral source. *Ciminski v. SCI Corp.*, 90 Wn.2d 802, 804, 585 P.2d 1182 (1978); *Stone v. City of Seattle*, 64 Wn.2d 166, 172, 391 P.2d 179 (1964). It applies when payment comes from a source independent of the tortfeasor, *Ciminski*, 90 Wn.2d at 804, *Bliss v. City of Newport*, 58 Wn. App. 238, 241 n.2, 792 P.2d 184 (1990); *Lange v. Raef*, 34 Wn. App. 701, 704, 664 P.2d 1274 (1983), but not when payment comes from the tortfeasor or a fund created by the tortfeasor. *Lange*, 34 Wn. App. at 704; David K. DeWolf & Keller W. Allen, *Tort Law and Practice*, 16 WASHINGTON PRACTICE § 4.42, at 96 (1993). It does not apply here because, as

The answer to this question turns on the relationship between liability coverage and PIP coverage. In analyzing that relationship, we rely not only on cases dealing with the relationship between liability coverage and PIP coverage, but also on cases dealing with the relationship between UIM coverage and PIP coverage. The two relationships are analogous, at least for purposes of this case, because each involves a fault-based form of coverage (liability or UIM) and a no-fault form of coverage (PIP).[9]

■ Generally, liability coverage and PIP coverage are deemed separate. Thus, in *Nationwide Mut. Ins. Co. v. Kelleher,* 22 Wn. App. 712, 717, 591 P.2d 859 (1979), the court said, "The insured paid for two separate coverages, bodily injury and PIP; thus, there are essentially two contracts with [the insurer]." And, in APPLEMAN ON INSURANCE, the author states:

> Generally, medical payment clauses are considered to constitute separate accident insurance coverage. Such coverage is divisible from the remainder of the policy, and creates a direct liability to the contemplated beneficiaries . . . .
>
> Such provision is a separate obligation of the insurer, independent of its obligation to pay sums of money as damages under the liability features of the contract. It has no relevance to the financial responsibility law. Nor is liability for such payment in any way dependent upon negligence of the insured. Accordingly, a company could make payment under the medical expense feature but deny liability under its B.I. coverage.[10]

■ Nothing in Washington law prohibits an insurer from agreeing to pay under both coverages, without offset.

---

noted in the text, the payments in issue here come from Bair's PIP coverage, and such coverage is a fund created by her.

[9]*See Keenan v. Indus. Indem. Ins. Co.,* 108 Wn.2d 314, 316, 319, 738 P.2d 270 (1987) (PIP is a form of no-fault coverage); *Pemco Ins. Co. v. Schlea,* 63 Wn. App. 107, 110 n.3, 817 P.2d 878 (1991) (same).

[10]JOHN ALAN APPLEMAN & JEAN APPLEMAN, 8A INSURANCE LAW AND PRACTICE § 4902, at 228 (rev. ed. 1981); *see also,* RCW 48.22.085, effective July 1, 1994 (when liability carrier issues liability coverage, it must offer PIP "as an optional coverage.").

Although the law does not permit an insurer to coordinate coverages in such a way that an injured person will receive *less than* a tort measure of damages (i.e., less than damages attributable to the fault of the tortfeasor),[11] the law does not prevent an insurer from contracting in such a way that an injured person will receive *more than* a tort measure of damages (i.e., more than damages attributable to a tortfeasor's fault).[12]

Whether an insurer has agreed to pay under both coverages turns on how a reasonable purchaser of insurance would read the pertinent policy.[13] If a reasonable purchaser would read it as providing for payment under both coverages, the insurer must pay under both coverages. If a reasonable purchaser would read it as requiring payment under only one coverage, the insurer must pay under only one coverage. Typically, a reasonable purchaser would read the policy as requiring payment under only one coverage if the policy contains an offset clause, reimbursement clause, subrogation clause, or similar language.

Bair argues that these principles do not apply here; the reason, she says, is that this is a tort case, not a contract case. That is not correct. Maziarski is necessarily a third

---

[11]*Brown v. Snohomish County Physicians Corp.*, 120 Wn.2d 747, 754-55, 845 P.2d 334 (1993); *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 219-20, 588 P.2d 191 (1978); *Taxter v. Safeco Ins. Co.*, 44 Wn. App. 121, 130-31, 721 P.2d 972 (1986), *review denied*, 108 Wn.2d 1037 (1987); *State Farm Mut. Auto. Ins. Co. v. Lou*, 36 Wn. App. 838, 841, 678 P.2d 339 (1984); *Nationwide Mut. Ins. Co. v. Kelleher*, 22 Wn. App. 712, 716, 591 P.2d 859 (1979); *cf. Keenan*, 108 Wn.2d at 318-22 (law permits insurer to coordinate coverages by means of reimbursement clause, so long as claimant is not denied all damages attributable to tortfeasor's fault); *Reichl v. State Farm Mut. Auto. Ins. Co.*, 75 Wn. App. 452, 455-56, 880 P.2d 558 (1994) (same); *Mattson v. Stone*, 32 Wn. App. 630, 632, 648 P.2d 929 (1982) (same).

[12]*Barney v. Safeco Ins. Co.*, 73 Wn. App. 426, 428-31, 869 P.2d 1093 (1994), and cases cited at 432; *Blocker v. Sterling*, 251 Md. 55, 246 A.2d 226 (1968); *Severson v. Milwaukee Auto. Ins. Co.*, 265 Wis. 488, 61 N.W.2d 872; 42 A.L.R.2d 976 (1953).

[13]*Barney*, 73 Wn. App. at 429; *see Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990); *Kowal v. Grange Ins. Ass'n*, 110 Wn.2d 239, 246, 751 P.2d 306 (1988).

party beneficiary of Bair's PIP coverage.[14] If Bair's policy says he is entitled to recover PIP payments as well as damages attributable to Bair's fault, he is so entitled. On the other hand, if Bair's policy says Hartford may offset PIP payments against damages attributable to Bair's fault, it is so entitled, subject to Maziarski's right to recover at least the amount awarded by the jury. Either way, the principles that apply here are those set forth above.

Lacking Bair's policy, we have no way of determining whether Maziarski should be permitted to retain both Hartford's PIP payments and the amount of the judgment, or, conversely, whether Bair should be allowed to offset Hartford's PIP payments against the amount of the judgment. It follows that the record is insufficient to support an offset; that Bair has failed to prove her claim to an offset; and that the trial court erred by granting an offset.

█ Attempting to refute these conclusions, Bair argues that to deny her an offset is to grant Maziarski "double recovery." Her unstated premise is that recovery in excess of a tort measure of damages (i.e., any recovery in excess of damages attributable to her fault) constitutes "double recovery." That premise, however, is flawed. "Double recovery" is recovery that exceeds the applicable measure of damages.[15] Here, as already noted, the applicable measure of damages is whatever Bair's policy says it is. If the policy says Maziarski can receive and retain PIP payments, as well as damages attributable to Bair's fault, that is the applicable measure of damages. If the policy says Maziarski must disgorge PIP payments once he receives all damages attributable to her fault, that is the applicable measure. Without Bair's policy, we have no

---

[14]*Lou,* 36 Wn. App. at 841; *Mattson,* 32 Wn. App. at 633.

[15]*Barney,* 73 Wn. App. at 428.

way of knowing what the applicable measure of damages is, and Bair has failed to show that Maziarski is achieving "double recovery."

Bair further argues that denying her an offset impugns the concept of contributory negligence. Her premise is similar to that related in the preceding paragraph: Recovery exceeding damages attributable to her fault is improper. That premise, however, is incorrect. Nothing in the law prohibited Hartford from contracting to pay more than damages attributable to her fault. If it did so contract, requiring that it pay according to its contract does not offend any part of the law, including the concept of contributory negligence. Without Bair's contract, we have no way of knowing whether Maziarski's recovery should be limited to damages attributable to Bair's fault, and Bair's present argument fails.

Bair relies on *Scott v. Cascade Structures*[16] and *Erdman v. Lower Yakima Valley, Wash. Lodge No. 2112 of B.P.O.E.*[17] Even assuming those cases represent current law,[18] neither has any bearing on whether one claiming an offset has successfully proved her claim.

*Lange v. Raef,*[19] a case relied on by both parties, is consistent with the result we reach here. In *Lange,* the tortfeasor paid the claimant's medical bills before trial. After trial, he had no way of proving that the jury had awarded such bills, for the jury returned a general verdict. Hence, he had no way of proving that his payment should be offset against the judgment, and his claim of payment failed for lack of proof.

In summary, we would recognize Bair's claim to an offset if (a) she had produced her policy, and (b) a reasonable purchaser of insurance would read her policy as al-

---

[16]100 Wn.2d 537, 673 P.2d 179 (1983).

[17]41 Wn. App. 197, 704 P.2d 150, *review denied*, 104 Wn.2d 1030 (1985).

[18]*Compare* RCW 4.22.070, effective August 1, 1986; *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 290-99, 840 P.2d 860 (1992).

[19]34 Wn. App. at 701.

lowing her to offset PIP payments against damages attributable to her fault.[20] Because she has failed to meet either condition, however, she has failed to prove her claim of offset; the record is insufficient to support an offset; and the trial court erred by granting an offset.

Reversed and remanded for entry of an amended judgment not subject to offset.

HOUGHTON, A.C.J., and TURNER, J., concur.

After modification, further reconsideration denied November 22, 1996.

---

[20]*See Schrader v. Grange Ins. Co.*, 83 Wn. App. 662, 922 P.2d 818 (1996); *Taxter*, 44 Wn. App. at 130-31. In making this statement, we do not consider the possible effects of RCW 48.22.085-.100, effective July 1, 1994. Those statutes were not in force at the time of the events in issue here.