229 P.3d 893 (2010)
Olga MATSYUK, individually, and on behalf of all those similarly situated, Appellant,
v.
STATE FARM FIRE & CASUALTY CO., Respondent.
No. 64151-4-I.
Court of Appeals of Washington, Division 1.
March 29, 2010.
*895 David R. Hallowell, Matthew James Ide, Seattle, WA, for Appellant.
Hozaifa Y. Cassubhai, Attorney at Law, Kenneth E. Payson, Stephen Michael Rummage, Seattle, WA, for Respondent.
APPELWICK, J.
¶ 1 Matsyuk was injured while riding as a passenger in a car. She recovered from the at-fault driver's insurance company, State Farm, under both the personal injury protection and liability coverages. Matsyuk then sought a pro rata share of her attorney fees from State Farm. Because Matsyuk's recovery of both liability and personal injury protection payments came from the tortfeasor's insurer, no common fund was created and fee sharing is not appropriate. The trial court *896 properly granted State Farm's CR 12(b)(6) motion to dismiss her claims for attorney fees, breach of contract, conversion, bad faith, and Consumer Protection Act, chapter 19.86 RCW, violation and denied her motion for partial summary judgment on the attorney fees issue. We affirm.

FACTS
¶ 2 Olga Matsyuk and Omelyan Stremditskyy were in a car accident. Stremditskyy, the driver, was at fault and Matsyuk, the passenger, was injured. State Farm Fire & Casualty Company insured Stremditskyy's vehicle, including liability coverage and personal injury protection (PIP).[1] PIP coverage was available to Matsyuk as an occupant in Stremditskyy's vehicle, making her an additional insured even though she was not named in the policy. State Farm paid Matsyuk $1,874 under the PIP coverage.
¶ 3 Matsyuk then sued Stremditskyy for personal injury. Matsyuk and State Farm reached a settlement including a release of claims against Stremditskyy. The release stated,
For the sole consideration of Five Thousand Eight Hundred Seventy-Four and No/100th Dollars ($5,874.00) (Four Thousand and No/100th dollars ($4,000) in addition to payments made/to be made under the Personal Injury Protection coverage in the amount of One Thousand Eight Hundred Seventy-Four and No/100th Dollars ($1,874.00)), the receipt and sufficiency whereof is hereby acknowledged, OLGA MATSYUK, the undersigned, hereby releases and forever discharges OMELYAN STREMDITSKYY....
State Farm then gave Matsyuk a check for $4,000. State Farm stated that it would not pay a pro rata share of Matsyuk's legal expenses incurred in obtaining the liability recovery.
¶ 4 Matsyuk then brought this lawsuit against State Farm for failing to share in her legal expenses, claiming bad faith, conversion, breach of contract, and Consumer Protection Act (CPA) violations. State Farm moved under CR 12(b)(6) to dismiss Matsyuk's complaint for failure to state a claim on which relief can be granted. Matsyuk moved for partial summary judgment on whether State Farm was required to pay a share of her legal expenses incurred in obtaining the liability recovery. The trial court granted State Farm's CR 12(b)(6) motion and denied Matsyuk's motion for partial summary judgment. Matsyuk timely appeals.

DISCUSSION

I. Standard of Review

¶ 5 Whether dismissal was appropriate under CR 12(b)(6) is a question of law that the court reviews de novo. San Juan County v. No New Gas Tax, 160 Wash.2d 141, 164, 157 P.3d 831 (2007). Under CR 12(b)(6), dismissal is appropriate only when it appears beyond doubt that the claimant can prove no set of facts, consistent with the complaint, which would justify recovery. Id. Such motions should be granted sparingly and with care, and only in the unusual case in which the plaintiff's allegations show on the face of the complaint an insuperable bar to relief. Id.[2]
¶ 6 A motion for summary judgment presents a question of law reviewed de novo. Osborn v. Mason County, 157 Wash.2d 18, 22, 134 P.3d 197 (2006). We construe the evidence in the light most favorable to the nonmoving party. Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998). We grant summary judgment if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c).

*897 II. Sharing of Legal Expenses

¶ 7 The issue here is whether State Farm is required to contribute pro rata to Matsyuk's legal expenses, incurred in obtaining her liability recovery from Stremditskyy. Matsyuk argues that State Farm offset the PIP coverage against her liability recovery without sharing in her legal expenses, preventing her from being fully compensated. State Farm contends that it was not required to contribute to Matsyuk's legal expenses. State Farm argues that, under the policy, Matsyuk's liability recovery did not create a common fund to reimburse State Farm for its previous payment.
¶ 8 Generally, the American rule requires civil litigants to pay their own legal expenses unless so provided by contract, statute, or a recognized equitable ground. Dayton v. Farmers Ins. Group, 124 Wash.2d 277, 280, 876 P.2d 896 (1994). A recognized exception to this rule allows fee sharing in cases where litigants preserve or create a common fund for the benefit of others as well as themselves. Covell v. City of Seattle, 127 Wash.2d 874, 891, 905 P.2d 324 (1995).
¶ 9 An insurer may have a subrogation right in law, equity, or contract to the extent of payments to its insured. Mahler v. Szucs, 135 Wash.2d 398, 412-13, 957 P.2d 632 (1998).[3] The insurer may seek reimbursement from the recovery its insured obtains from the party at fault, subject to limitations:
The general rule is that, while an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a tortfeasor responsible for the damage, it can recover only the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss.
This rule embodies a policy deemed socially desirable in this state, in that it fosters the adequate indemnification of innocent automobile accident victims.
Thiringer v. Am. Motors Ins. Co., 91 Wash.2d 215, 219-20, 588 P.2d 191 (1978) (citations omitted). To the extent the insured's recovery from the tortfeasor is in excess of the funds needed to make the insured whole, the fund is available to reimburse the insurer. Id. at 219, 588 P.2d 191. This reimbursement is a benefit to the insurer and makes the insured's recovery a common fund. Mahler, 135 Wash.2d at 426-27, 957 P.2d 632. The insurer being reimbursed from that fund must pay a pro rata portion of the fees incurred in obtaining it. Id. The purpose of this rule is to ensure equity: "`It is grossly inequitable to expect an insured, or other claimant, in the process of protecting his own interest, to protect those of the [insurer] as well and still pay counsel for his labors out of his own pocket, or out of the proceeds of the remaining funds.'" Mahler, 135 Wash.2d at 425 n. 17, 957 P.2d 632 (alteration in original) (quoting 8A JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW & PRACTICE § 4903.85, at 335 (1981)).
¶ 10 Mahler is the first in a line of automobile insurance cases clarifying the fee sharing rule. Mahler applied the common fund doctrine when the insured recovered from a fully insured tortfeasor and reimbursed PIP payments received from her insurance carrier. Id. at 436, 957 P.2d 632. Winters v. State Farm Mutual Automobile Insurance Co. employed the common fund doctrine when the insured recovered funds from an underinsured tortfeasor and her own underinsured motorist (UIM)[4] coverage and reimbursed PIP payments from her own insurance carrier. 144 Wash.2d 869, 880, 31 P.3d 1164 (2002). Finally, Hamm v. State Farm Mutual Automobile Insurance Co. applied the common fund doctrine where the tortfeasor was uninsured and paid nothing. *898 151 Wash.2d 303, 318-19, 88 P.3d 395 (2004). Hamm qualified as an insured and recovered both PIP and UIM payments under the same policy. Id. at 306-07, 88 P.3d 395. When the insurer offset amounts owed under the UIM coverage for amounts paid under the PIP coverage, it received a benefit, a reimbursement of the PIP payments. Id. at 312-13, 88 P.3d 395.
¶ 11 The only case to address whether the common fund doctrine requires the sharing of legal expenses where both PIP and liability payments are made by the tortfeasor's insurer held that it was not.[5]Young v. Teti, 104 Wash.App. 721, 726-27, 16 P.3d 1275 (2001). Matsyuk contends that the result in that case cannot be reconciled with the subsequent decision in Hamm. We disagree.
¶ 12 Hamm was injured and was paid PIP benefits under the policy covering her. Hamm, 151 Wash.2d at 306, 88 P.3d 395. The tortfeasor was uninsured, so Hamm was also entitled to recover under the UIM coverage of the same policy. Id. The insurer stood in the shoes of the tortfeasor. Id. at 308-09, 88 P.3d 395. The combination of funds recovered was in excess of the amount needed to make Hamm whole. Id. at 320-21, 88 P.3d 395. The insurer offset[6] the amount it had paid under PIP coverage against the amounts due under the UIM coverage, as provided in a nonduplication of benefits clause. Id. at 311-12 & n. 4, 88 P.3d 395. The offset benefitted the insurer in its capacity as the PIP carrier by allowing it to be reimbursed without making a post recovery claim against its insured. Id. at 313, 88 P.3d 395. The court held, "An insurance company may not, however, style this offset as a reduction of any amount owed under UIM coverage, rather than a PIP reimbursement, in order to avoid paying a pro rata share of the insured's legal expenses." Id. at 321, 88 P.3d 395.
¶ 13 Here, the nonduplication of benefits clause[7] was not a means of achieving reimbursement while avoiding fee sharing, as in Hamm. Matsyuk was a third party beneficiary of the insurance contract, not a party to the contract. State Farm had no contractual right of reimbursement from Matsyuk's recovery fund for the PIP payments it made. Nor did State Farm have a right of subrogation to exercise. State Farm paid Matsyuk. Any subrogation right would have been against the tortfeasor, Stremditskyy, its own insured. But, an insurer has no right of subrogation against its own insured. Sherry v. Fin. Indem. Co., 160 Wash.2d 611, 618, 160 P.3d 31 (2007). There was no right of reimbursement to effectuate and no subrogation litigation cost to avoid.
¶ 14 None of the equitable considerations behind the fee sharing rule are present. In order to create an equitable need to share fees, the common fund must be created entirely by the efforts of the PIP insured. Winters, 144 Wash.2d at 881, 31 P.3d 1164. Here the PIP coverage was provided under the tortfeasor's policy and is deemed a fund created by the tortfeasor. Maziarski v. Bair, 83 Wash.App. 835, 841 n. 8, 924 P.2d 409 (1996). Because that portion of the fund *899 is not attributable to the efforts of Matsyuk, it would be inequitable to award her fees for its recovery. Also, the court in Hamm expressed concern that the insured not be worse off because she purchased two coverages, PIP and UIM, from the same insurer. 151 Wash.2d at 315, 88 P.3d 395.
¶ 15 Here, the insured did not purchase any of the coverages. In addition, Matsyuk received full compensation for her injuries. A tortfeasor is generally not responsible to pay the injured party's attorney fees as part of tort compensation. Dayton, 124 Wash.2d at 280, 876 P.2d 896; Norris v. Church & Co. Inc., 115 Wash.App. 511, 517, 63 P.3d 153 (2002). Matsyuk did not receive any lesser recovery by virtue of the offset of coverages than the tortfeasor was obligated to pay. Norris, 115 Wash.App. at 517, 63 P.3d 153. Therefore, the offset under the nonduplication of benefits clause in the tortfeasor's policy is not bound by the equitable considerations in Hamm. It did not, as a matter of law, trigger common fund fee sharing considerations.
¶ 16 Had Matsyuk and Hamm gone to trial, the parties would have obtained the same respective results. At trial, what the plaintiff would recover and what the defendant must pay in a judgment is determined by the collateral source rule.[8] Generally, the collateral source rule would prevent the introduction of evidence at trial of payments made by an insurance company. Lange v. Raef, 34 Wash.App. 701, 704, 664 P.2d 1274 (1983). But, where the source of the collateral payments is the at-fault party or a fund created by him to make such payments, the collateral source rule is inapplicable. Id. Such payments may be proven by the tortfeasor at trial to prevent double recovery by the injured party. Id. PIP payments made by the tortfeasor's insurance company are a fund created by the tortfeasor. See id.; Maziarski, 83 Wash.App. at 841 n. 8, 924 P.2d 409 ("[The collateral source rule] does not apply here because, as noted in the text, the payments in issue here come from [the tortfeasor's] PIP coverage, and such coverage is a fund created by her."). Had this case gone to trial, Stremditskyy would have been entitled to introduce evidence of the PIP payments to Matsyuk made by his insurer, State Farm, and to have any liability judgment reduced by the amount of those payments. Lange, 34 Wash.App. at 704, 664 P.2d 1274. The ultimate liability payment recovered at trial would have been the same, and Matsyuk would have had no right to recover any attorney fees. Norris, 115 Wash.App. at 517, 63 P.3d 153.
¶ 17 But, had Hamm gone to trial, the PIP payments in Hamm would have been attributable to Hamm's insurer. Maziarski, 83 Wash.App. at 841 n. 8, 924 P.2d 409. In contrast, the UIM payments would have been treated "as if made by the tortfeasor." Winters, 144 Wash.2d at 880, 31 P.3d 1164. Therefore, the PIP payments would have been treated as a collateral source and would not have been admitted to reduce the UIM liability at trial. Hamm, 151 Wash.2d at 319, 88 P.3d 395. The ultimate judgment would have triggered the insurer's right of reimbursement, and therefore its duty to share in the fees under Mahler. Winters, 144 Wash.2d at 881, 31 P.3d 1164.
¶ 18 The resulting obligation to share in the plaintiff's attorney fees should be the same whether the recovery is obtained via settlement or trial. The application of Hamm sought by Matsyuk would yield inconsistent results and could deter settlement. Where PIP coverage and liability coverage both are attributable to the tortfeasor, we hold that no common fund exists and no equitable reason exists to impose fee sharing.
¶ 19 As a matter of law, Matsyuk was not entitled to a contribution of fees from State Farm. The trial court did not err in granting State Farm's CR 12(b)(6) motion to dismiss and in denying Matsyuk's motion for partial summary judgment on this claim.

*900 III. Breach of Contract

¶ 20 Matsyuk next contends the trial court improperly dismissed Matsyuk's breach of contract claim based on the policy language under CR 12(b)(6). Interpretation of an insurance contract is a question of law reviewed de novo. Woo v. Fireman's Fund Ins. Co., 161 Wash.2d 43, 52, 164 P.3d 454 (2007). Because they are generally contracts of adhesion, courts look at insurance contracts in a light most favorable to the insured. Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wash.2d 130, 141, 26 P.3d 910 (2001). A court must give the language of an insurance policy the same construction that an average person purchasing insurance would give the contract. Id. at 137-38, 26 P.3d 910.
¶ 21 Matsyuk argues that a proper interpretation of the State Farm policy language requires State Farm to pay a share of Matsyuk's legal expenses. The relevant policy provision read, "Our right to recover our payments applies only after the insured has been fully compensated for the bodily injury, property damage, or loss." (Boldface omitted.) Matsyuk's theory is that State Farm benefited by paying less under liability coverage because of her PIP recovery. Matsyuk argues that a reasonable consumer of insurance could infer that the insured would not be required to bear all the legal expense from a recovery that benefits both parties. But, State Farm has not sought recovery under this provision of the policy. The nonduplication of benefits clause precluded Matsyuk from recovering the PIP damages a second time under liability coverage. Without the double recovery she could be made whole, but would not have any excess recovery from which State Farm could seek reimbursement. Therefore, there could be no benefit, no common fund, and no fee sharing. Matsyuk has failed to provide a basis for the claim.
¶ 22 Because there is no set of facts here that could justify recovery, the trial court properly dismissed Matsyuk's breach of contract claim.

IV. Bad Faith, CPA, and Conversion Claims

¶ 23 Matsyuk argues her claims for bad faith, CPA violation, and conversion are viable independent claims that should have survived dismissal. For purposes of deciding the defendant's CR 12(b)(6) motion, all of Matsyuk's factual allegations in the complaint will be accepted as true. Dennis v. Heggen, 35 Wash.App. 432, 434, 667 P.2d 131 (1983).
¶ 24 Matsyuk alleged that State Farm violated the CPA by refusing the share legal expenses when recovering PIP payments. Matsyuk also alleged conversion on State Farm's refusal to contribute fees. These allegations do not state a claim separate from the legal argument about fee sharing rejected above. Because Matsyuk was not entitled to fee sharing, no set of facts consistent with the complaint would justify recovery under these claims.
¶ 25 Matsyuk alleged that State Farm violated the CPA, as well as its duty to act in good faith, by improperly refusing to effectuate the settlement on behalf of Stremditskyy unless Matsyuk gave up her independent claims against State Farm as a PIP insured. An insurer has a duty to act in good faith, including a duty to deal fairly with its insured.[9]Tank v. State Farm Fire & Cas. Co., 105 Wash.2d 381, 387, 715 P.2d 1133 (1986). Whether an insurer has acted in bad faith is a question of fact. Smith v. Safeco Ins. Co., 150 Wash.2d 478, 484, 78 P.3d 1274 (2003). But, the question of whether the complaint alleges sufficient facts to state a claim for bad faith may be reviewed as a question of law. No New Gas Tax, 160 Wash.2d at 164, 157 P.3d 831. To prevail, Matsyuk must have shown that State Farm's alleged misconduct was unreasonable, frivolous, or untenable. Liberty Mut. Ins. Co. v. Tripp, 144 Wash.2d 1, 23, 25 P.3d 997 (2001).
*901 ¶ 26 The facts as alleged and as assumed to be true are the following: State Farm and Matsyuk came to an agreement on the amount of settlement for Matsyuk's liability claim against Stremditskyy. The parties agreed that State Farm would reduce its ultimate payment by the amount already paid under the PIP coverage, but State Farm declined to pay additional funds to cover a pro rata share of Matsyuk's legal expenses. When Matsyuk disagreed and demanded payment for legal expenses, State Farm refused to complete the settlement unless the plaintiff released her claims as a PIP insured against State Farm. Ultimately, the parties agreed to preserve any claims Matsyuk had against State Farm as a PIP insured and completed the settlement.[10]
¶ 27 As a matter of law, these facts do not establish a claim for bad faith. In light of the decision in Young, State Farm had no obligation to pay Matsyuk's fees. 104 Wash. App. at 727, 16 P.3d 1275. State Farm refused to do what it had no obligation at law to do. It was not unreasonable, frivolous, or untenable to do so. Tripp, 144 Wash.2d at 23, 25 P.3d 997. The complaint failed to state a claim for bad faith. Accordingly, the complaint also failed to state a claim for a CPA violation. Dismissal was proper.
¶ 28 The trial court did not err in dismissing Matsyuk's claims for bad faith, CPA violation, and conversion which originate from the fee-sharing issue under CR 12(b)(6).

V. Amendment of the Complaint

¶ 29 Matsyuk argues that the trial court should have granted her request to amend her complaint for any deficiencies. She did not specify how she would amend her complaint at either the trial court level or in her briefs to this court. State Farm argues that such an amendment would be futile.
¶ 30 CR 15 provides that leave to amend, "[S]hall be freely given when justice so requires." The decision to grant leave to amend the pleadings is within the discretion of the trial court. Wilson v. Horsley, 137 Wash.2d 500, 505, 974 P.2d 316 (1999). Therefore, when reviewing the trial court's decision to grant or deny leave to amend, courts apply a manifest abuse of discretion test. Id. The trial court's decision will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable or exercised on untenable grounds or for untenable reasons. Id. The touchstone for the denial of a motion to amend is the prejudice such an amendment would cause to the nonmoving party. Id. Factors which may be considered in determining whether permitting amendment would cause prejudice include undue delay, unfair surprise, and jury confusion. Id. at 505-506, 974 P.2d 316. Denying a motion for leave to amend is not an abuse of discretion if the proposed amendment is futile. Rodriguez, 144 Wash.App. at 729, 189 P.3d 168.
¶ 31 Matsyuk is attempting to avoid dismissal by requesting leave to amend, because as stated there is no legal basis for her claim to stand. Matsyuk has not identified a legal theory suggesting a possible cure. Without a new legal theory, amendment in this circumstance is futile. The trial court did not abuse its discretion in denying the amendment.
¶ 32 We affirm.
WE CONCUR: LEACH and COX, JJ.
NOTES
[1] PIP coverage generally provides benefits for the immediate costs of an automobile accident, including medical expenses and loss of income. Hamm v. State Farm Mut. Auto. Ins. Co., 151 Wash.2d 303, 308, 88 P.3d 395 (2004).
[2] Documents whose contents are alleged in a complaint but which are not physically attached to the pleading may be considered in ruling on a CR 12(b)(6) motion to dismiss. Rodriguez v. Loudeye Corp., 144 Wash.App. 709, 726, 189 P.3d 168 (2008). We will consider the release and Stremditskyy's policy in evaluating State Farm's motion to dismiss, because Matsyuk incorporated them into the complaint.
[3] The purpose of subrogation is to put the financial consequences on the party responsible for the loss. Mahler, 135 Wash.2d at 411, 957 P.2d 632. There are two features to subrogation: right to reimbursement and the mechanism for enforcement of that right. Id. at 412, 957 P.2d 632. The insurer's right to reimbursement can be effectuated through a lien against any recovery the insured has obtained from a third party or by suing the at-fault party directly. Id. at 412-13, 957 P.2d 632.
[4] UIM insurance covers the costs incurred in an accident where the defendant is at fault and is either not insured or whose liability policies are insufficient to cover the damage. RCW 48.22.030(1); Hamm, 151 Wash.2d at 308, 88 P.3d 395.
[5] Young was decided before Winters and Hamm and not expressly overruled by either. In Young, at-fault driver Teti injured passenger Young. 104 Wash.App. at 722, 16 P.3d 1275. Teti's insurer, Allstate Indemnity Company, paid Young's medical expenses under a PIP provision, and then paid Young's jury verdict against Teti under the liability coverage. Id. at 723, 16 P.3d 1275. The court held that Mahler fee sharing was not required for two reasons. Id. at 726-27, 16 P.3d 1275. First, because Young was not Allstate's insured but rather a third party beneficiary, she did not create a common fund. Id. at 725-27, 16 P.3d 1275. Her recovery did not benefit anyone other than herself. Id. No third party reimbursed Allstate. Id. at 726, 16 P.3d 1275. Second, Allstate did not benefit from Young's lawsuit, therefore Young did not create a common fund. Id. at 727, 16 P.3d 1275.
[6] "Offset" refers to a credit to which an insurer is entitled for payments made under one coverage against claims made under another coverage within the same policy. Winters, 144 Wash.2d at 876, 31 P.3d 1164. "Setoff" refers to sums paid to the insured by another party. Id.
[7] The nonduplication clause contained in the insurance policy provides,

We will not pay any damages or expenses under Liability Coverage;
1. that have already been paid as benefits under Personal Injury Protection Coverage of any policy issued ... to [Stremditskyy]....
(Emphasis omitted.)
[8] The collateral source rule is the "`well settled rule in tort actions that a party has a cause of action notwithstanding the payment of his loss by an insurance company.'" Mahler, 135 Wash.2d at 412 n. 4, 957 P.2d 632 (quoting Consol. Freightways v. Moore, 38 Wash.2d 427, 430, 229 P.2d 882 (1951)). A collateral source is a source independent of one of the tortfeasors. Mazon v. Krafchick, 126 Wash.App. 207, 220, 108 P.3d 139 (2005), rev'd on other grounds, 158 Wash.2d 440, 144 P.3d 1168 (2006).
[9] "The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance." RCW 48.01.030.
[10] The release stated, "Provided, however, that nothing in this Release shall preclude the undersigned from pursuing claims, if any, that she purports to have as an insured under the Personal Injury Protection coverage provided by [Stremditskyy's] ... policy."